[L.A. No. 30454. In Bank. April 28, 1976.]

ADAM C. CARTWRIGHT, JR., Plaintiff and Respondent, v.
BOARD OF CHIROPRACTIC EXAMINERS,
Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, and Alan Hager, Deputy Attorney General, for Defendant and Appellant.

Roger Jon Diamond, Hecht & Diamond and Hecht, Diamond & Freis for Plaintiff and Respondent.

## OPINION

WRIGHT, C. J.—Following disciplinary proceedings under section 10 of the Chiropractic Act[1] the defendant State Board of Chiropractic Examiners revoked plaintiff's license to practice. Thereafter on plaintiff's petition for a writ of mandate (Code Civ. Proc., § 1094.5) the trial court entered judgment commanding the board to set aside the revocation order. The board appeals.

---

[1] The Chiropractic Act is an initiative measure appearing in West's Annotated Business and Professions Code following section 1000 and in the Appendix to Deering's Business and Professions Code.

The trial court found that the revocation order was based on two charges of "conviction of a crime involving moral turpitude" (Chiropractic Act, § 10). One conviction was based on plaintiff's plea of guilty to violation of Penal Code section 315 (hereafter section 315).[2] However, no competent evidence of the circumstances surrounding the offense was introduced at the board hearing and the court concluded that the bare conviction did not establish moral turpitude in the absence of such evidence. The other conviction was based on plaintiff's plea of nolo contendere (Pen. Code, § 1016, subd. 3) to a charge of violating Penal Code section 316 (hereafter section 316).[3] Although the board *did* receive evidence of the circumstances surrounding the section 316 conviction, the trial court concluded that under a settled California rule of decision a conviction based on a plea of nolo contendere could not be a basis for discipline under section 10 of the Chiropractic Act. We agree with the trial court's conclusions and affirm the judgment.

The evidence adduced at the administrative hearing concerning the circumstances surrounding the charged violation of section 316 to which plaintiff pleaded nolo contendere included testimony describing unsavory sexual activity on premises with which plaintiff was professionally associated. The dependence of the section 316 conviction upon the nolo contendere plea rendered irrelevant any issue of whether the charged offense involved moral turpitude, and the terms of the Chiropractic Act precluded the board and the trial court and now preclude us from considering this evidence for any other purpose. The Chiropractic Act contains no general provision making conduct involving moral turpitude a ground for discipline in the absence of a criminal conviction based on such conduct. Plaintiff was not shown to have engaged in any of the particular fraudulent or intemperate acts specified by section 10 of the Chiropractic Act as grounds for discipline. Although discipline may be imposed for breaches of rules of professional conduct adopted by the

[2]Section 315 provides: "Every person who keeps a house of ill-fame in this state, resorted to for the purposes of prostitution or lewdness, or who willfully resides in such house, is guilty of a misdemeanor; and in all prosecutions for keeping or resorting to such a house common repute may be received as competent evidence of the character of the house, the purpose for which it is kept or used, and the character of the women inhabiting or resorting to it."

[3]Section 316 provides: "Every person who keeps any disorderly house, or any house for the purpose of assignation or prostitution, or any house of public resort, by which the peace, comfort, or decency of the immediate neighborhood is habitually disturbed, or who keeps any inn in a disorderly manner; and every person who lets any apartment or tenement, knowing that it is to be used for the purpose of assignation or prostitution, is guilty of a misdemeanor."

board, no applicable rule had been put into effect at the times relevant here. (See fn. 4, *post.*)

### *Absence of Showing That Section 315 Conviction Involved Moral Turpitude*

■ Nothing in the record connects the evidence of plaintiff's misuse of his professional license with his section 315 conviction. No competent evidence of the circumstances surrounding the conviction was received by the trial court, and defendant has not challenged the court's finding that no such evidence was presented at the administrative hearing. Evidence of sexual misconduct on plaintiff's professional premises might well be relevant if plaintiff were being disciplined for violation of rules of professional conduct,[4] but to support a charge that a *conviction* involves moral turpitude it must be connected with that conviction.[5]

Accordingly, plaintiff's conviction of violating section 315 supports professional discipline against him in the present proceeding only if *any* conviction of a licensed chiropractor for violation of section 315 would establish moral turpitude on its face regardless of the underlying circumstances. (See *In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.I..R.3d 465]; *In re Hallinan* (1954) 43 Cal.2d 243, 248-250 [272 P.2d 768].) ■ "Only if the minimum elements for a conviction necessarily involve moral turpitude and a conviction cannot

---

[4]Section 10 of the Chiropractic Act authorizes the defendant board to adopt rules of professional conduct and to revoke a chiropractic license or impose other discipline for violation of such rules. Defendant has adopted such a rule (a) making every licensee responsible for insuring that the conduct of his employees and other persons subject to his supervision in his place of practice conforms to the law and (b) prohibiting sexual acts or erotic behavior involving patients, patrons or customers on premises in connection with which a license is used. (Cal. Admin. Code, tit. 16, § 316.) However, the regulation did not become effective until August 12, 1971, which was subsequent to the conduct in evidence in the present case. In any event, plaintiff is charged only with convictions and not independent misconduct in the present proceeding.

[5]It is suggested that plaintiff admitted his conviction under section 315 was based on "keeping a house of prostitution" rather than on any other conduct proscribed by the section when he stipulated at the administrative hearing to the truth of the allegation in the supplemental accusation that "by his plea of guilty [he] was convicted of a violation of section 315 of the Penal Code (keeping a house of prostitution)." The quoted parenthetical phrase could reasonably be regarded by the trial court as simply an abbreviated description of the contents of section 315 rather than as a reference to any particular conduct constituting the violation. Hence the existence of the stipulation does not undermine our obligation to treat as supported by substantial evidence and therefore binding on appeal the trial court's finding of the lack of proof of circumstances surrounding the conviction. (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].)

be had without proof of facts showing moral turpitude, can the conviction be held to be of an offense involving moral turpitude." (*Lorenz* v. *Board of Medical Examiners* (1956) 46 Cal.2d 684, 687 [298 P.2d 537].)

■ Although we have variously defined "moral turpitude" in such broad terms as "baseness, vileness or depravity" (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]; see *In re Fahey, supra*, 8 Cal.3d 842, 849), we have also decided that the question of whether a conviction involves moral turpitude *so as to* warrant revocation or suspension of a license to practice a profession cannot be determined in the abstract but depends rather on whether the conviction demonstrates unfitness to practice that profession (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 459 [55 Cal.Rptr. 228, 421 P.2d 76]; *In re Rothrock* (1940) 16 Cal.2d 449, 455 [106 P.2d 907, 131 A.L.R. 226]). The state's power to regulate a profession cannot be used arbitrarily to penalize conduct having no demonstrable bearing upon fitness for its practice. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 239 [82 Cal.Rptr. 175, 461 P.2d 375].)

■ Examination of section 315 shows that proof of its violation does not necessarily include facts showing moral turpitude for purposes of imposing professional discipline upon a chiropractor. The section provides in pertinent part that "[e]very person who keeps a house of ill-fame in this state, resorted to for the purposes of prostitution or lewdness, *or* who willfully resides in such house, is guilty of a misdemeanor." (Italics added.)

The section's prohibition against willful residence in a house of ill-fame has apparently never been judicially construed in a reported California decision. The term "house of ill-fame" has been construed in other contexts as synonymous with "house of prostitution." (*People* v. *Frey* (1964) 228 Cal.App.2d 33, 52 [39 Cal.Rptr. 49]; *People* v. *Charles* (1963) 218 Cal.App.2d 812, 816 [32 Cal.Rptr. 653]; *People* v. *Marron* (1934) 140 Cal.App. 432, 435 [35 P.2d 610].) The word "willfully" "implies a purpose or willingness to commit the act (Pen. Code, § 7, subd. 1), and although it does not require an evil intent, it implies that the person knows what he is doing, intends to do what he is doing and is a free agent. [Citations omitted.]" (*In re Trombley* (1948) 31 Cal.2d 801, 807 [193 P.2d 734]; accord, *People* v. *Howard* (1969) 70 Cal.2d 618, 622 [75 Cal.Rptr. 761, 451 P.2d 401].)

It follows that to violate section 315 by willfully residing in a house of ill fame one must do so voluntarily and with knowledge of the nature of the establishment. Moreover, the evident statutory purpose of deterring the evil of prostitution requires that the prohibition against willful residence be limited to those who by their residence knowingly encourage or support the maintenance of that evil on the premises. (*In re Gladys R.* (1970) 1 Cal.3d 855, 868 [83 Cal.Rptr. 671, 464 P.2d 127]; *People* v. *Carskaddon* (1957) 49 Cal.2d 423, 425-426 [318 P.2d 4].)[6] But even as thus construed, the prohibition would encompass a resident who paid the rent to the proprietor with knowledge and intent that the rental income contribute necessary economic support to the illicit operation. Thus, conviction of violating section 315 does not necessarily require proof of personal or entrepreneurial participation in illicit sexual activities. Instead the conviction can be based on circumstances of personal residence wholly unrelated to chiropractic practice and only peripherally related to prostitution. Such a conviction would not demonstrate professional unfitness on account of baseness, vileness or depravity. (See *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, 73.) Accordingly, the bare conviction of violating section 315 does not warrant revocation of plaintiff's license for "the conviction of a crime involving moral turpitude" (Chiropractic Act, § 10). (*Lorenz* v. *Board of Medical Examiners, supra,* 46 Cal.2d 684, 687.)

*Effect of Nolo Contendere Plea on Use of*
*Section 316 Conviction to Impose Discipline*

■ The specification of plaintiff's conviction under section 316 as a ground for revoking his license raises the question of whether statutory authorization of professional discipline or other punitive or regulatory action on account of a "conviction" can be the basis for administrative or judicial imposition of punishment grounded in a conviction stemming from a plea of nolo contendere. A review of prior California decisions on this question shows that except in one instance convictions based on nolo contendere pleas have until now been rejected in California as a basis for discipline or other adverse *legal* consequences unless a statute expressly specifies such convictions as a basis for such consequences.

---

[6]These cases construe Penal Code section 647a, punishing one who "annoys or molests any child under the age of 18." They hold that in light of the evident legislative purpose of protecting children from interference by sexual offenders the section applies only to persons whose acts of annoyance or molestation are motivated by abnormal sexual interest.

The first case to present the question was *Caminetti* v. *Imperial Mut. L. Ins. Co.* (1943) 59 Cal.App.2d 476 [39 P.2d 681]. There the Insurance Commissioner sought to continue his conservatorship over the assets of an insurance company (Ins. Code, §§ 1011, 1012) on the ground, inter alia, that the company did not qualify for a certificate of authority (Ins. Code, § 1011, subd. (h) [formerly subd. (i)]) in that two of its officers had been "convicted of a felony having as one of its necessary elements a fraudulent act or an act of dishonesty in the solicitation of, acceptance, custody, or payment of money or property" (Ins. Code, § 704.5 as it read before 1965). In support of this position the commissioner alleged that the officers had been convicted of a federal felony of conspiracy to defraud the United States government upon their pleas of nolo contendere. On the commissioner's appeal from an order terminating the conservatorship, the appellate court held that the commissioner had properly been refused permission to prove the convictions because of the nature of the underlying pleas.

The suggestion that the *Caminetti* court intended simply to prohibit the use of a nolo contendere plea to prove the facts (fraudulent conduct) underlying the convictions rather than to exclude the convictions themselves as a basis for continuing the conservatorship is simply not borne out by the court's discussion (59 Cal.App.2d at pp. 489-492). The *Caminetti* opinion squarely framed the issue as the admissibility of the convictions themselves and clearly paraphrased the above-mentioned provisions of Insurance Code sections 704.5 and 1011 specifying consequences of an insurance company officer's conviction of a felony having a fraudulent act as a necessary element. After reviewing precedents from other jurisdictions and a superior court opinion in another case, the appellate court concluded that a nolo contendere plea in a federal case constituted an "agreement" by the defendant that "for the purpose of that case and for no other purpose . . . the federal court may assume that the defendant is guilty" and that because of the agreement it would be inequitable to permit use of the resulting conviction for any purpose outside of the criminal proceeding. (59 Cal.App.2d at p. 492.) Although the opinion does use language to the effect that a nolo contendere plea cannot be used as an "admission" of guilt, the opinion makes clear that the issue before the court was whether a conviction based on a nolo contendere plea could itself be a basis for adverse consequences prescribed by a statute for convictions per se.

In the only prior case to present the issue to this court we approved the rejection of convictions based on nolo contendere pleas as grounds for

professional discipline. (*In re Hallinan* (1954) 43 Cal.2d 243, 247 [272 P.2d 768].) There an attorney who had been convicted on a jury verdict of filing false federal income tax returns contended that disciplinary proceedings against him for conviction of a crime involving moral turpitude were unconstitutionally discriminatory because of the State Bar's failure to proceed against other attorneys who had been adjudged guilty of similar offenses on pleas of nolo contendere. Rejecting the contention, we said: "In view of *Caminetti* v. *Imperial Mut. L. Ins. Co.,* 59 Cal.App.2d 476, 490-492 [139 P.2d 681], holding that a plea of *nolo contendere* is not the equivalent of a plea of guilty and cannot be used in another proceeding as an admission against the person so pleading, the State Bar was justified in concluding that such a plea was not the equivalent of a 'plea or verdict of guilty' within the meaning of section 6101 of the Business and Professions Code." (43 Cal.2d at p. 247.)

Although this quotation from *Hallinan* refers to "a plea or verdict of guilty," the applicable statute (former Bus. & Prof. Code, § 6101) provided for discipline on account of convictions generally. It declared: "Conviction of a felony or misdemeanor, involving moral turpitude, constitutes a cause for disbarment or suspension as provided in section 6102." It then went on to provide for transmission to this court of a "certified copy of the record of conviction" as "conclusive evidence." In a final paragraph the section provided: "A plea or verdict of guilty is deemed to be a conviction within the meaning of this section." (Stats. 1939, ch. 34, § 1, p. 357; see *In re Hallinan, supra,* 43 Cal.2d at p. 246, fn. †, p. 247, fn. *.) The evident purpose of the final paragraph was to authorize immediate suspension of the attorney based on a guilty plea or verdict rather than to qualify the direction to this court "[u]pon the receipt of the certified copy of the record of conviction" to "order the attorney disbarred when the time for appeal has elapsed or the judgment of conviction has been affirmed on appeal" (former Bus. & Prof. Code, § 6102; Stats. 1941, ch. 1183, § 1, p. 2942; *In re Hallinan, supra,* 43 Cal.2d at p. 246, fn. ‡). Thus in *Hallinan* we applied the *Caminetti* holding to a statute which, like the one in the instant case, prescribed professional discipline for a conviction involving moral turpitude without expressing any limitation as to the underlying plea or other procedure leading to the conviction.

The next case to examine the problem in the light of *Caminetti* and *Hallinan* was *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal.App.3d 209 [83 Cal.Rptr. 89], where the issue was whether a nolo contendere plea under Penal Code section 1016, subdivision 3, followed by a

suspended sentence and order of probation, could be the basis for revocation of a liquor license on the ground of a "plea, verdict, or judgment of guilty to any public offense involving moral turpitude" (Bus. & Prof. Code, § 24200). Examining cases from other jurisdictions concerning the permissible use of convictions based on nolo contendere pleas in administrative proceedings, the *Kirby* court concluded that there is a majority view allowing the fact of conviction, as distinct from the plea itself, to be used as the basis for an administrative penalty and a minority view that such use of the conviction would be an invalid circumvention of the principle that a plea of nolo contendere cannot be used for any purpose outside the criminal proceeding in which it is entered. The court further stated that the *Caminetti* and *Hallinan* decisions had "adopted the minority view" in cases involving federal nolo contendere pleas prior to enactment of Penal Code section 1016, subdivision 3, which first authorized the use of such pleas in California courts. (3 Cal.App.3d at pp. 219-220.)

The court pointed out that in reaction to *Caminetti* and *Hallinan* the Legislature had selectively amended a number of sections of the Business and Professions Code to make convictions following nolo contendere pleas an express ground for disciplining licensees in certain vocations and concluded that these amendments indicated a legislative intent that the nonavailability of such convictions for disciplinary purposes under *Caminetti* and *Hallinan* remain intact under code sections that had not been so amended. (3 Cal.App.3d at pp. 220-221.) Accordingly the court held that the liquor license could not be revoked on the basis of the nolo contendere plea followed by suspension of sentence and probation.

In *Grannis* v. *Board of Medical Examiners* (1971) 19 Cal.App.3d 551 [96 Cal.Rptr. 863], the court extensively quoted the *Kirby* discussion of the foregoing points and held that a medical doctor's conviction on a nolo contendere plea of violating Vehicle Code section 23102 (misdemeanor drunk driving) could not be the basis for revoking his certificate to practice medicine for "the conviction of more than one misdemeanor . . . involving the use, consumption or self-administration of [alcoholic beverages]" (Bus. & Prof. Code, § 2390, prior to 1974 amendment).

The fact that the Chiropractic Act is an initiative measure (see fn. 1, *ante*) does not immunize it from the inference drawn by *Kirby* and *Grannis* that the Legislature by amending certain statutes to include nolo contendere pleas in the stated grounds for discipline intended to preserve

the law excluding convictions based on such pleas from the scope of statutes not so amended. The Legislature can amend an initiative measure by a statute that becomes effective when approved by the electorate (Const., art. IV, § 24, subd. (c)) and did so amend the very statute now before us as recently as 1970. In that year the Legislature proposed and the electors approved an amendment to section 10 of the Chiropractic Act expanding the kinds of discipline the present defendant could impose and authorizing it to adopt rules of professional conduct and discipline licensees for their violation. (Stats. 1970, ch. 643, § 2, p. 1261, approved by electors on Nov. 3, 1970.) Even though the section was then before it for possible revision, the Legislature did not propose any express inclusion of convictions based on pleas of nolo contendere as a ground for discipline.

The only reported California decision to have permitted a conviction based on a nolo contendere plea to give rise to consequences adverse to the pleader outside of the criminal proceeding is *Christensen v. Orr* (1969) 275 Cal.App.2d 12 [79 Cal.Rptr. 656]. There a licensed driver had pleaded nolo contendere to a charge of drunk driving within seven years after being convicted on another charge of the same offense. The Department of Motor Vehicles suspended his driver's license under Vehicle Code section 13352, subdivision (c), which provides for such suspension upon a second conviction for drunk driving within seven years. In an unusually brief opinion citing neither *Caminetti, Hallinan,* nor any other prior decision the appellate court held that the suspension was proper. The opinion's statement that "[t]o establish a criminal conviction, the nolo contendere plea was the same as a guilty plea" (275 Cal.App.2d at p. 13) appears to have been based on the wording of Penal Code section 1016, subdivision 3, which provides: "The legal effect of . . . a plea [of nolo contendere] shall be the same as that of a plea of guilty, but the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." This provision makes a plea of nolo contendere equivalent to a guilty plea merely for the purpose of the criminal proceeding. Although it expressly forbids subsequent use of the plea as an admission of guilt in certain civil suits, it does not purport to deal with the effect to be given in a collateral proceeding to a conviction based on the plea and instead leaves such effect open to determination under applicable case law. Accordingly, *Christensen* is disapproved.

In view of the brevity of the *Christensen* opinion, its lack of reference to prior decisions, and the subsequent *Kirby* and *Grannis* decisions

declining to follow it, *Christensen* cannot fairly be said to have altered the reasonable expectations of persons examining the law on the subject, namely, that in California a conviction based on a plea of nolo contendere would not be allowed as a ground for discipline or other adverse consequences authorized by a statute for convictions generally. Both the courts of other jurisdictions and the commentators that have considered the matter have regarded such decisions as *Caminetti, Hallinan,* and *Kirby* as committing California to this principle. (See *State Bar* v. *Lewis* (1973) 389 Mich. 668, 680 [209 N.W.2d 203] (citing *Hallinan, Kirby*); *In re Corcoran* (1969) 215 Ore. 660, 662 [337 P.2d 307] (citing *Caminetti*); *State* ex rel. *Woods* v. *Thrower* (1961) 272 Ala. 344, 347 [131 So.2d 420] (citing *Caminetti*); Note (1964) 52 Cal.L.Rev. 408, 416; Note (1971) 44 So.Cal.L.Rev. 737, 756.) This heretofore settled nature of the California rule against collateral use of convictions based on nolo contendere pleas is an important reason for permitting the rule to remain in effect unless and until changed by legislation. Those who have entered nolo contendere pleas in the past instead of standing trial were entitled to rely upon the limitations announced by California decisions on subsequent uses of their pleas and of the ensuing convictions. (See *Pfotzer* v. *Aqua Systems* (2d Cir. 1947) 162 F.2d 779, 785.)

Moreover, the legislative purpose of including the "conviction" of certain crimes as grounds for discipline in section 10 of the Chiropractic Act and similar statutes is not merely to single out persons who have been the subject of certain procedural formalities but to reach those who have actually committed the underlying offenses. The conviction is significant in the statutory scheme only insofar as it is a reliable indicator of actual guilt. When the conviction rests on the verdict or finding of a trier of fact after trial, it means that guilt has been established beyond a reasonable doubt, and when the conviction rests on a plea of guilty, it means that the defendant has voluntarily admitted guilt for all purposes. But when the conviction is based on a nolo contendere plea, its reliability as an indicator of actual guilt is substantially reduced, both because of the defendant's reservations about admitting guilt for all purposes[7] and because the willingness of the district attorney to agree to and the court to approve the plea tends to indicate weakness in the available proof of guilt.[8]

---

[7]"Throughout its history . . . the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." (*North Carolina* v. *Alford* (1970) 400 U.S. 25, 36, fn. 8 [27 L.Ed.2d 162, 170, 91 S.Ct. 160].)

[8]As originally enacted in 1963, subdivision 3 of Penal Code section 1016 authorized use of the plea of nolo contendere "subject to the consent of the district attorney and

Since a conviction after a nolo contendere plea is no more accurate as a reflection of guilt than the plea on which it is based, there appears little if any rational distinction between the basing of administrative discipline on such a conviction and basing it on the plea itself, which is concededly excluded from collateral proceedings.[9] Any inclusion of such convictions as a basis for discipline under section 10 of the Chiropractic Act or similar statutes should be based not on an arbitrary judicial distinction between nolo contendere pleas and the resulting convictions but on a legislative determination that such pleas and convictions are sufficiently reliable indicators of guilt to warrant disciplinary measures for the protection of the public.

The judgment is affirmed.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I would hold that revocation of plaintiff's license may be sustained on either of two independent alternative grounds: his conviction (1) following a plea of guilty to a charge of keeping or willfully residing in a house of ill-fame (Pen. Code, § 315), or (2) following a plea of nolo contendere to a charge of keeping a disorderly house (Pen. Code, § 316).

At the administrative hearing plaintiff stipulated that the board's accusation and a supplement thereto correctly alleged that he had been convicted of the above described offenses following the pleas previously noted in Los Angeles Superior Court as to Penal Code section 315, and in that county's municipal court as to Penal Code section 316.

A portion of the relevant testimony introduced at the hearing may be described. On April 14, 1971, Charles Stowell, an investigator for the

---

with the approval of the court." A 1975 amendment eliminates the necessity for the district attorney's consent.

[9]This commonsense equivalence between prohibiting the collateral use of nolo contendere pleas and prohibiting such use of the convictions based on such pleas prompted the drafters of Evidence Code section 1300 to insert an exception which is italicized in the following quotation of the section: "Evidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment *unless the judgment was based on a plea of nolo contendere.*" The comment of the Law Revision Commission, which drafted the section, explains: "The exclusion of judgments based on a plea of nolo contendere from the exception in Section 1300 is a reflection of the policy expressed in Penal Code section 1016" (that is, the policy of prohibiting use of the plea as an admission in civil suits).

state Department of Consumer Affairs, went to the Barrington Health Center, a massage parlor on West Pico Boulevard in Los Angeles. He requested a massage and was told by employee Janice that the price would be $12. He was taken to a massage room and while there heard a female voice in the adjoining room offer to perform an act of oral copulation for $20 and a male voice accept this offer. By looking over a partition, he then observed Millie, a female employee, masturbating a male. Janice then returned to the room, and offered to perform various sexual acts of masturbation, oral copulation and sexual intercourse with Stowell for fees ranging from $10 to $40. Stowell declined, left the premises, and shortly returned with police officers and arrested Janice, Millie, Rita, and plaintiff.

When arrested, and after waiving his right to remain silent plaintiff told Stowell that he worked for Hall and McGee, owners of the health center. He declined to say how he was paid but did say that the initial fee went to "the company" and the girls in the establishment "made their money from the customers directly." Stowell examined the entire premises and saw no chiropractic equipment, but he did observe a photostatic copy of plaintiff's chiropractic license posted on the wall. This incident led to plaintiff's conviction following his plea of nolo contendere to a charge of violating Penal Code section 316.

Police testimony of other incidents was introduced. Sergeant Mathes of the Los Angeles Police Department testified that he had previously visited the same center on January 6, 1971, and requested a massage. Plaintiff, upon entering the room to which Mathes had been taken, inquired of Mathes why he had not removed his clothes, and informed Mathes that the female employees of the establishment performed the massages. Plaintiff did not examine Mathes, left the room, and was followed by a young female employee named Marie Spears who told Sergeant Mathes that massages were a secondary matter at the center, and offered an act of oral copulation for $10. Mathes arrested her. Upon hearing of this arrest, plaintiff told Mathes that the center was a "doctor's office," that Mathes' activity was interfering with his business and that "all the girls on the premises were under his direct and immediate supervision." Mathes thereupon arrested plaintiff. The record does not affirmatively show whether or not this arrest resulted in plaintiff's conviction under Penal Code section 315.

Another witness, Badillo, a licensed chiropractor who served as an undercover agent for the Los Angeles police, testified that in early 1971

he worked at another massage parlor in the San Fernando Valley owned by Hall and McGee, who told him that he was no longer to work there and that "they were going to leave the operation up to Dr. Cartwright." After leaving their employ, Badillo telephoned the valley parlor and spoke to a man who identified himself as plaintiff. Badillo discussed the flagrant acts of prostitution he had observed at the massage parlors, and the man responded that the topic of prostitution should not be discussed over the telephone. In amplification, plaintiff, when asked if he believed Badillo's statement that acts of prostitution were being committed, replied, "Well I had some, maybe, slight indication, but I did not see any prostitution and acts of prostitution going on."

Plaintiff denied any knowledge of alleged illegal conduct at the center or at any other location where he had been employed by Hall and McGee.

For some reason the hearing officer chose not to believe plaintiff's testimony, and made the following findings: That "[o]n or about April 14, 1971, respondent [plaintiff] did allow his license to practice chiropractic to be posted at the premises of the Barrington Health Center, 11716 West Pico Boulevard, Los Angeles, California, and did there purport to carry on a chiropractic practice, while in truth and in fact he [plaintiff] well knew that females who were giving messages [sic] at said location were also soliciting and engaging in oral copulation of male patients as well as soliciting and engaging in masturbation of male patients." The board after examining the record adopted these findings and revoked plaintiff's license.

1. *Penal Code Section 315*

It is uncontradicted that plaintiff pleaded guilty to a violation of section 315, and was thereupon convicted of that offense. Section 315 declares that "Every person who keeps a house of ill-fame in this state, resorted to for the purposes of prostitution or lewdness, or who willfully resides in such house, is guilty of a misdemeanor; . . . ." The majority hold that since section 10 of the Chiropractic Act requires a "conviction of a crime involving moral turpitude," and since the record is silent regarding the circumstances underlying plaintiff's conviction, the requisite moral turpitude has not been established. To the contrary, in my view, a conviction under section 315 establishes moral turpitude per se and is sufficient, standing alone, to support revocation of plaintiff's license.

We have recently stated in *In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465], that the "[c]onviction of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud or intentional dishonesty for the purpose of personal gain. [Citation.] They may also include particular crimes that are extremely repugnant to accepted moral standards such as murder [citation] or serious sexual offenses. [Citation.] There are other crimes the commission of which may or may not involve moral turpitude; conviction of these is not ground for discipline without additional proof of circumstances surrounding the offense."

"Moral turpitude" has been variously defined. Sometime ago we said that it was "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]; see also *In re Fahey, supra,* 8 Cal.3d 842, 849; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 73 [64 Cal.Rptr. 785, 435 P.2d 553].) We have also described it more broadly as any crime or misconduct committed without excuse (*In re Hallinan* (1954) 43 Cal.2d 243, 251 [272 P.2d 768]; *In re Rothrock* (1940) 16 Cal.2d 449, 453 [106 P.2d 907, 131 A.L.R. 226]). The foregoing expressions, of necessity, are somewhat general and we have not chosen to narrow "the inquiry by promulgating more specific definitions. Accordingly, we must focus on the general question whether the totality of the facts . . . demonstrate 'baseness, vileness or depravity.' " (*Yakov* v. *Board of Medical Examiners, supra,* at p. 73; and see *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 220 [82 Cal.Rptr. 175, 461 P.2d 375].)

As indicated above, I believe that a violation of Penal Code section 315 constitutes moral turpitude per se. The majority suggest that since no evidence was admitted at the administrative hearing regarding plaintiff's offense under this section, the conviction *might* have been based "on circumstances of personal residence wholly unrelated to chiropractic practice and only peripherally related to prostitution. Such a conviction would not demonstrate professional unfitness on account of baseness, vileness or depravity." Thus, it is the majority's premise that plaintiff might have pleaded guilty to an offense of no greater gravity than simply residing in a place where prostitution activities occurred, and paying rent "to the proprietor with knowledge and intent that the rental income contribute necessary economic support to the illicit operation."

With due deference to the majority, I suggest that in reaching the foregoing conclusion on the basis of the record before us they indulge in unwarranted speculation and display toward plaintiff either naivete or undue charity or both. Plaintiff was no mere "resident" or disinterested tenant. The administrative record establishes that on at least two separate occasions plaintiff "supervised" the illicit sexual activities of female employees. Despite the prominent display of plaintiff's chiropractor's license, no chiropractic equipment was observed on the premises. A local ordinance required the presence of a licensed chiropractor as a condition to carrying on an establishment wherein females massage males. It would be reasonable to conclude from the foregoing record that plaintiff used his professional license as a ruse, guise or cover for the maintenance of an establishment where sexual acts were sold and that he was paid for his participation in the scheme. Although the record does not affirmatively show the circumstances of plaintiff's conviction under section 315, we may reasonably infer that this conviction followed plaintiff's arrest on January 6, 1971, described above. In any event, there was ample evidence indicating that plaintiff's conduct constituted a debasement of his license and warranted its revocation.

## 2. *Penal Code Section 316*

It will be recalled that the conviction under section 316 followed a plea of nolo contendere. The majority hold that, by reason of the nolo plea, plaintiff was rendered immune from disciplinary action under the Chiropractic Act despite the fact that the evidence underlying this conviction, described above, convincingly established plaintiff's moral turpitude. Since the evident purpose of the act was to protect the general public by assuring that practitioners could be subject to loss of their licenses to practice chiropractic by reason of such convictions, I cannot join the majority in exculpating plaintiff solely by reason of his entry of a nolo plea.

The Chiropractic Act was an initiative measure adopted by the voters in 1922. Section 10, subdivision (b), of the act provides that "The board shall refuse to grant, or may suspend or revoke, a license to practice chiropractic in this state, . . . for any cause specified in this act, including, . . . the conviction of a crime involving moral turpitude; . . ." (3 West's Ann. Bus. & Prof. Code (1974 ed.) p. 147 [Deering's, Bus. & Prof. Code, App. I, § 10(b)].) This language seems plain enough: If, as here, a licensed chiropractor suffers a *conviction* of a crime involving moral turpitude, his license may be revoked.

Yet the majority insist that since plaintiff's conviction under Penal Code section 316 followed a nolo contendere plea, the conviction may not be considered, despite the act's apparent language to the contrary. In my opinion the majority's analysis is faulty in several respects. First, the majority rely upon the cases of *In re Hallinan, supra,* 43 Cal.2d 243, 247, and *Caminetti* v. *Imperial Mut. L. Ins. Co.* (1943) 59 Cal.App.2d 476 [39 P.2d 681] (hg. den.), as establishing a general principle of law barring the use of convictions following nolo pleas as the basis for other adverse consequences in judicial or quasi-judicial proceedings unless a statute expressly specifies such convictions as a basis for such consequences. *Caminetti* and *Hallinan* are poor choices as precedent, for both cases have been "deplored as unfortunate" decisions which are ripe for overruling. (Note, *Nolo Contendere—Its Use and Effect* (1964) 52 Cal.L.Rev. 408, 422.) As the authors of the foregoing note explain, "Aside from granting protection against admissions in subsequent civil suits, the courts have never articulated any reasons why a defendant should be able to insulate himself from all adverse effects of his conviction following a plea of *nolo contendere.* Nor is any reason apparent in California where the objective of the legislature was only to prevent private parties from using admissions in criminal cases as a basis for civil suits." (*Id.,* at p. 416.)

Furthermore, as the majority concede, the *Caminetti/Hallinan* rule clearly represents a minority view in this country; a majority of jurisdictions allow the fact of conviction (as distinguished from the nolo plea itself) to be used as the basis for administrative discipline. (See *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal.App.3d 209, 219-220 [83 Cal.Rptr. 89], and cases cited.)

In addition to the fact that *Hallinan/Caminetti* represent a doubtful, minority position, the majority seemingly fail to realize that the Legislature in 1963 rejected that position by enacting Penal Code section 1016, subdivision 3, which limits the rule of those cases in the following manner: "The legal effect of such a [nolo contendere] plea shall be the same as that of a plea of guilty, but the plea may not be used against the defendant as an admission *in any civil suit* based upon or growing out of the act upon which the criminal prosecution is based." (Italics added.) The legislative history indicates that this provision was adopted to enable the defendant "both to save the time and expense of trial and guard himself against admissions that could be used in a subsequent *civil* suit," such as one brought by the victim of his criminal act. (Note, *supra,* 52 Cal.L.Rev. at p. 409, italics added; see also *id.,* at p. 416.) Section 1016,

subdivision 3, thus reflects a legislative rejection of *Caminetti* and *Hallinan.* (*Id.,* at pp. 418, 422.)

Indeed, the very language of this provision, and particularly the reference to "any civil suit," discloses an intent to confine application of the section to ordinary civil litigation. An administrative disciplinary proceeding is not a "civil" action; the word "civil" connotes actions or special proceedings *in courts,* and not hearings before boards. (*Bold* v. *Board of Medical Examiners* (1933) 133 Cal.App. 23, 25 [23 P.2d 826].) Accordingly, it has been held that a conviction based upon a nolo plea may afford the basis for the revocation of a license despite the language of section 1016, subdivision 3. (*Christensen* v. *Orr* (1969) 275 Cal.App.2d 12 [79 Cal.Rptr. 656].)

The majority rely upon two other cases decided subsequent to the enactment of section 1016, subdivision 3. The first, *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 3 Cal.App.3d 209, is inapposite since it dealt with a statutory provision which authorized discipline only where there occurred a "plea, verdict, or judgment of guilty . . ." rather than simply requiring a "conviction." As *Kirby* itself points out in distinguishing *Christensen, supra,* " 'To establish a criminal conviction, the nolo contendere plea was the same as a guilty plea.' " (P. 221.) Similarly, *Grannis* v. *Board of Medical Examiners* (1971) 19 Cal.App.3d 551 [96 Cal.Rptr. 863] (hg. den., Peters, J. to grant), is factually distinguishable, since in that case the convicted defendant was subsequently permitted to withdraw his nolo plea and obtain a dismissal of the proceedings, pursuant to Penal Code sections 1203.3 and 1203.4. *Grannis* held that the trial court erred in concluding that the original judgment of conviction, subsequently dismissed, was nevertheless a "conviction" within the meaning of the disciplinary statute. (P. 560.)

The courts in *Kirby* and *Grannis* also found it significant that following our decision in *In re Hallinan, supra,* 43 Cal.2d 243, the Legislature amended a number of statutes to make it clear that convictions following nolo pleas could be used to impose administrative sanctions in other professions. (See *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 3 Cal.App.3d at p. 220 and *Grannis* v. *Board of Medical Examiners, supra,* 19 Cal.App.3d at p. 558, where these amendments are reviewed.) The statutes upon which the agency action in *Kirby* and *Grannis* was predicated had not been so amended, and this was viewed by the courts in those cases as indicative of a legislative intent that the nolo pleas not be used in the particular administrative disciplinary proceedings there

under consideration. However, similar importance cannot be attached to the absence of such an amendment in the instant case, since the Chiropractic Act, adopted as an initiative measure, cannot be changed by legislative action alone. (Cal. Const., art. IV, § 24, subd. (c).)

Even were we to conclude, however, that by reason of plaintiff's nolo plea, revocation of plaintiff's license could not be based solely upon the fact of his conviction, that does not end the matter. As pointed out in the recent case of *Estate of McGowan* (1973) 35 Cal.App.3d 611, 618 [111 Cal.Rptr. 39], if a prior conviction is based upon a nolo plea, the court ". . . must independently examine the facts in order to determine whether the defendant actually committed the offense alleged for purposes of the particular civil proceeding [citation]." (P. 618, fn. omitted.) *This is precisely what the board did in the present case.*

The evidence presented to the board established that plaintiff knowingly used his professional license to provide a subterfuge for the maintenance of a prostitution operation. I have no doubt that such conduct may fairly be deemed an act of "baseness . . . in the private and social duties" which is owed to the public and to a profession, "contrary to the accepted and customary rule of right and duty" between persons. (*In re Craig, supra,* 12 Cal.2d at p. 97.) Plaintiff has not challenged the board's finding that he knowingly allowed the female employees supervised by him in his alleged "chiropractic" work to solicit, and engage for compensation, in acts of oral copulation and masturbation. On the basis of such a record, I agree with the board's conclusion that plaintiff is morally unfit to practice chiropractic and that his license should be revoked. The Legislature has denominated the practice of chiropractic as one of the healing arts. (Bus. & Prof. Code, §§ 500-4905.) An unknowing public relying on the board's issuance of a chiropractic license is entitled to far more protection in the health field than that demonstrated by the narrow interpretation indulged by the majority.

I would reverse the judgment and remand the cause to the superior court with directions to deny the petition for mandate.

McComb, J., and Clark, J., concurred.