Filed 5/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TONIKA LYNETTE MILLER,<br><br>    Defendant;<br><br>LION SHARE INVESTMENTS, LLC,<br><br>    Real Party in Interest and<br>    Appellant. | A161601<br><br>(San Mateo County<br>Super. Ct. No. 18SF014403B) |

An elderly victim signed a purchase agreement conveying her home (Property) to Rex Regum, LLC (Rex Regum), a corporation controlled by Justin Hall. Based on false representations by defendant Tonika Lynette Miller, the victim believed she was instead signing a document to obtain a reverse mortgage for $500,000. Unaware of that transaction, and believing Rex Regum was the lawful owner of the Property, real party in interest Lion Share Investments, LLC (Lion Share), purchased the Property from Rex Regum. Rex Regum thereafter executed a grant deed transferring title to Lion Share.

Miller later pled no contest to procuring and offering a false or forged instrument and to unlawfully taking real property from the victim. (Pen. Code, §§ 115, subd. (a), 487, subd. (a); undesignated statutory references are to the Penal Code.) Pursuant to section 115, subdivision (e) (section 115(e)),

1

the People moved to void the deed conveying the Property to Rex Regum. Partially relying on Miller's no contest plea, the trial court found the deed was false and forged and thus void from its inception.

On appeal, Lion Share argues Miller's no contest plea "was not an adjudication of the alleged falsity or forgery" of the deed and was thus an insufficient basis for the trial court's voiding the deed under section 115(e). Without a full determination of the facts, Lion Share contends, the court's finding was not supported by the record. Lion Share also argues that, as a matter of due process, the court should have deferred to Lion Share's pending quiet title action to afford a full adjudication of its claim to the Property. We disagree and affirm.

## BACKGROUND

Sara J., an elderly woman, owned the Property in Redwood City and resided there with her husband, who has dementia, and Cynthia S., a tenant. In 2018, San Mateo County informed Sara that she owed property taxes and faced a foreclosure sale. Miller, a real estate salesperson, contacted Sara and offered to secure a reverse mortgage to help save the Property. Sara agreed; she believed a reverse mortgage would allow her to use her equity in the Property to pay the taxes. Miller and her employer, Hall, indicated they would pay Sara's tax obligation, and Sara would reimburse them by sending them $150 every month. Cynthia coordinated with Miller on Sara's behalf. Sara agreed to pay $25,000 from the proceeds of the transaction to Cynthia as compensation for her assistance.

On July 23, 2018, Miller provided Sara with a document to sign. At the time, Sara believed the document was to secure a $500,000 reverse mortgage. Sara also thought that after she signed the document, Miller would pay the owed property taxes to prevent a foreclosure sale. Miller pressured Sara to

2

sign the document quickly, explaining she needed to pay the overdue property taxes before the county office closed for the day. Sara did not read the document but nonetheless signed it. In fact, the document was a purchase agreement resulting in the sale of the Property to Rex Regum for $500,000.[1] Although Sara's delinquent taxes were paid, a deed transferring title of the Property from Sara to Rex Regum was recorded the same day. Sara did not learn that she had sold her property until August 2, when an inspector from the San Mateo County District Attorney's Office notified her of the sale. Later in August, Lion Share purchased the Property from Rex Regum. A deed reflecting Lion Share's title to the Property was recorded on August 27.

In December 2018, the San Mateo County District Attorney charged Hall and Miller with several criminal offenses arising from the transfer of the Property from Sara to Rex Regum and subsequently to Lion Share. In November 2019, Miller pled no contest to unlawfully and knowingly procuring and offering a false or forged instrument to be filed in a state public office and recorded under state and federal law. (§ 115, subd. (a).) She also pled no contest to grand theft of the Property. (§ 487, subd. (a).) Hall pled not guilty to all charges including procuring a false or forged instrument and grand theft of real and personal property.

Shortly after the criminal complaint was filed against Miller and Hall, Lion Share filed a quiet title action in January 2019 and asserted ownership of the Property. At her deposition, Sara consistently testified she did not intend to sell her house. Rather, she believed Miller gave her the document to obtain a reverse mortgage. She was shocked when the inspector notified

---

[1] It is unclear from the record whether Sara received this money from Rex Regum.

her that she sold the Property to Rex Regum. She stated, "I had no idea that I had sold my house." In response, Rex Regum produced text messages from Cynthia, some conveying Sara's purported happiness regarding the availability of possible homes for purchase. In her deposition, however, Sara explained she did not believe she had any choice but to move as she no longer had a home because it had been stolen from her. Cynthia refused to appear for a deposition.

While the quiet title action was pending, but after Miller pled no contest, the People filed a motion to void the deed conveying Sara's home to Rex Regum. (§ 115(e).) In multiple rounds of briefing and oral arguments, Lion Share opposed the motion and argued the trial court should defer to the quiet title action as the appropriate forum for an adjudication of the parties' respective real property rights. Lion Share supported its position with, among other things, various declarations, portions of Sara's deposition testimony, and Cynthia's text messages.

Citing Miller's no contest pleas to procuring and offering a false or forged instrument and to grand theft of real property, as well as Sara's deposition testimony, the trial court determined the deed was forged. It found Sara relied on Miller's false representations and believed she was signing documents for a reverse mortgage, not a grant deed. The court further stated the "instrument is false because the property . . . was stolen from Sara . . . as indicated by defendant's conviction" for theft of real property. The court also concluded the matter was more appropriately addressed in the criminal proceeding rather than the quiet title action based on the interests of judicial economy, giving finality to Miller's criminal case, providing victim restitution, and potential prejudice to Sara resulting from

4

a lengthy civil proceeding.  The court then adjudged the deed void from its inception.

## DISCUSSION

Section 115 makes it a felony to knowingly procure or offer "any false or forged instrument to be filed, registered, or recorded in any public" state office.  (§ 115, subd. (a); *People v. Schmidt* (2019) 41 Cal.App.5th 1042, 1055 (*Schmidt*).)  A defendant violates this provision by either "procuring or offering a *false* instrument for filing," or "by procuring or offering a *forged* instrument for filing."  (*Schmidt*, at p. 1056.)  Section 115 was crafted "to prevent the recordation of spurious documents knowingly offered for record" and to protect the integrity of judicial and public records.  (*Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 681–682; *People v. Tate* (1997) 55 Cal.App.4th 663, 666.)

After "a person is convicted of a violation of [section 115], or a plea is entered whereby a charge alleging a violation of this section is dismissed and waiver is obtained pursuant to *People v. Harvey* (1979) 25 Cal.3d 754, upon written motion of the prosecuting agency," the court "shall issue a written order that the false or forged instrument be adjudged void ab initio if the court determines that an order is appropriate under applicable law."  (§ 115, subd. (e)(1).)  "The order shall state whether the instrument is false or forged, or both false and forged, and describe the nature of the falsity or forgery."  (*Ibid*.)  Section 115, subdivision (f) sets forth the process for a hearing on a motion to void a false or forged instrument.  Among other things, the subdivision requires that any hearing must be held with notice to all parties who have an interest in the property; any such parties have the right to be heard and present information to the court.  (§ 115, subd. (f)(1), (7)–(8).)  Moreover, "if the court determines that the interests of justice or the need to

protect the property rights of any person or party so requires . . . the court may decline to make a determination" that the instrument is void under subdivision (e).  (*Id.*, subd. (f)(9)(A).)

We review questions of statutory interpretation de novo, but otherwise review a judgment for substantial evidence.  (*Schmidt*, *supra*, 41 Cal.App.5th at p. 1056; § 115, subd. (h) [section 115(e) order is considered a judgment].)

I.

Lion Share contends a section 115(e) motion to declare the deed void from its inception cannot be based on a no contest plea.  After reviewing the text of section 115 and giving its words their usual and ordinary meaning, we disagree.  (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 332.)

Section 115(e) allows a prosecuting agency to move for an order that an instrument is void "[a]fter a person *is convicted* . . . or a plea is entered whereby a charge alleging a violation of this section is dismissed and waiver is obtained pursuant to *People v. Harvey* (1979) 25 Cal.3d 754."  (Italics added.)  Nothing in section 115's text indicates a prosecuting agency can move to declare an instrument void only if a person is convicted after a jury trial or a guilty plea rather than a plea of no contest.  (*Ibid.*)  " 'Courts may not rewrite statutes to supply omitted terms or to conform to an assumed, unexpressed legislative intent.' "  (*People v. Harper* (2003) 109 Cal.App.4th 520, 524.)  We will not infer any such requirement here.

Nor does the Penal Code generally make such distinctions.  "A guilty plea convicts the defendant of the charged crime without proof at trial." (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364.)  Such a plea admits every element of the charged crime and " 'is the "legal equivalent" of a "verdict" . . . "tantamount" to a "finding." ' "  (*People v. Wallace* (2004) 33 Cal.4th 738, 749.)  And the legal effect of a no contest plea to a crime

6

punishable as a felony is "the same as that of a plea of guilty *for all purposes*." (§ 1016, subd. (3), italics added; *Voit*, at p. 1364.) Thus, Miller's no contest plea to section 115, subdivision (a), a felony, admitted every element of that charged crime. In other words, it established Miller "did unlawfully and knowingly procure and offer a false and forged instrument to be filed, registered, and recorded in a public office within this state." (*Wallace*, at p. 749; § 115, subd. (a).) Hence, her plea of no contest constitutes a "conviction" under section 115(e).

Lion Share insists a section 115(e) motion must be predicated on a prior adjudication of the facts that the instrument is false or forged or both. In Lion Share's view, there was no adjudication here because Miller simply pled no contest to procuring or offering a false or forged instrument. Lion Share's narrow interpretation is belied by the statute's text. For example, a prosecuting agency may base the motion on a *dismissed* section 115 charge that includes a *Harvey* waiver. (§ 115(e).) A *Harvey* waiver permits a court to consider facts underlying unfiled or dismissed charges when determining an appropriate disposition for offenses for which the defendant is convicted. (*People v. Moser* (1996) 50 Cal.App.4th 130, 132–133; *People v. Beck* (1993) 17 Cal.App.4th 209, 215.) In those circumstances, section 115(e) contemplates the voiding of an instrument even when there may not be *any* prior adjudication that an instrument is false or forged.

Alternately, Lion Share urges us to limit the use of no contest pleas in section 115(e) motions because they are unreliable indicators of guilt. But the cases cited by Lion Share — all which limited the collateral use of no contest pleas to misdemeanors in subsequent civil proceedings — are inapplicable here. In *Kirby v. Alcoholic Beverage Control Appeals Board* (1969) 3 Cal.App.3d 209 (*Kirby*), the court determined a liquor license

7

revocation could not be based on a no contest plea to a misdemeanor charge. (*Id*. at p. 219.)  In *County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620 (*County of Los Angeles*), the court ruled a deputy sheriff's no contest plea to a misdemeanor charge of receiving stolen property could not be used in an administrative disciplinary hearing regarding the sheriff's termination.  (*Id*. at pp. 624, 628–629.)  And in *Cartwright v. Board of Chiropractic Examiners* (1976) 16 Cal.3d 762 (*Cartwright*), the court addressed "the question of whether statutory authorization of professional discipline or other punitive or regulatory action on account of a 'conviction' " as used in the Chiropractic Act and similar civil statutes, "can be the basis for administrative or judicial imposition of punishment grounded in a conviction" stemming from a no contest plea.  (*Cartwright*, at pp. 768, 773.)  It concluded a misdemeanor conviction for keeping a disorderly house based on a no contest plea cannot be considered a "conviction" under the Chiropractic Act for the purposes of revoking a chiropractor license.  (*Cartwright*, at p. 773.)

These cases are unlike the circumstances present here.  In this case, Miller's no contest plea was used as the basis for a motion in the *same criminal proceeding*, not a separate civil or administrative proceeding as in the other cases.  (§ 115, subd. (e)(1).)  (Lion Share's attempt to characterize a section 115(e) motion as a separate civil proceeding is unpersuasive.)  And while *Cartwright* observed a no contest plea has reduced reliability as an indicator of actual guilt because a "defendant's reservations about admitting guilt for all purposes and . . . the willingness of the district attorney to agree . . . indicate weakness in the available proof of guilt" that observation was based, in part, on a former version of section 1016.  (*Cartwright*, *supra*, 16 Cal.3d at pp. 772–773, fns. omitted.)

8

Originally, section 1016 "prohibited use of a [no contest] plea in a subsequent civil suit whether the plea was to a felony or to a misdemeanor." (*County of Los Angeles*, *supra*, 39 Cal.App.4th at p. 631, fn. 10.) "In 1982, the Legislature amended the section to permit use of a [no contest] plea *to a felony* in a subsequent civil suit but to bar use of a [no contest] plea *to a misdemeanor* in a subsequent civil suit." (*Ibid*.) As amended, section 1016 required a defendant's no contest plea to a crime punishable as a felony to be the same as a guilty plea *for all purposes*. (*County of Los Angeles*, at p. 628; § 1016, subd. (3).) That amendment "substantially narrowed the practical impact" of *Cartwright*. (*County of Los Angeles*, at p. 628.) And unlike *Cartwright*, *Kirby*, and *County of Los Angeles*, all which involved no contest pleas to misdemeanor charges, Miller pled no contest to a felony charge of section 115.

In sum, the People's section 115(e) motion was properly premised upon Miller's conviction via plea of no contest. The additional cases upon which Lion Share relies do not compel a different result.

## II.

Lion Share also contends there is insufficient evidence that the deed conveying the Property to Rex Regum was forged because the trial court relied entirely on Miller's no contest plea to support its finding. After reviewing the record for substantial evidence in the light most favorable to the judgment, we reject Lion Share's argument. (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Forgery involves a defendant, who "by fraud or trickery, causes another to execute a deed of trust or other document where the signer is unaware, by reason of such trickery, that he is executing a document of that nature." (*People v. Parker* (1967) 255 Cal.App.2d 664, 672.) Specifically, "[w]here

9

a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument," the signed paper is a forgery. (*Buck v. Superior Court* (1965) 232 Cal.App.2d 153, 162; see also *Parker*, at pp. 667, 672 [deed of trust forged where victims signed based on representation the document was a contract for aluminum siding].) In *People v. Astorga-Lider* (2019) 35 Cal.App.5th 646 (*Astorga-Lider*), for example, the victims believed they were signing a document — an agreement consummating the purchase of real property — that was substantially different from the actual document they signed — a deed of trust securing a loan for $275,000 in hard money that the defendant then controlled. (*Id.* at pp. 649, 653.) The victims were unaware they were borrowing that money and had no intention of encumbering their property with a deed of trust, thus the court determined the deed was a forgery. (*Id.* at p. 653.)

The circumstances here are comparable. Sara consistently testified to her belief, based on Miller's representations, that she was signing a reverse mortgage allowing her to retain and reside in her home. Instead, the document Sara signed was a purchase agreement selling the Property to Rex Regum — a substantially different document. (*Astorga-Lider*, *supra*, 35 Cal.App.5th at p. 653.) Like the victims in *Astorga-Lider*, Sara repeatedly noted she lacked any idea she was selling the Property and did not discover she had done so until August 2, 2018, the date an investigator notified her of the sale. (*Id.* at pp. 650, 653.) At her sentencing hearing, Miller confirmed she told Sara the document was " 'like a reverse mortgage,' " but the document she actually provided was an agreement to buy the house "outright." Hence, substantial evidence supports the trial court's conclusion

10

the deed was forged. (*Buck v. Superior Court*, *supra*, 232 Cal.App.2d at p. 162.)

Lion Share disputes this conclusion by citing text messages from Cynthia conveying Sara's happiness and her eagerness to find another house. According to Lion Share, these messages demonstrate Sara subsequently ratified the sale despite her earlier intent to retain her home. This argument ignores the standard of review. (*People v. Farnam* (2002) 28 Cal.4th 107, 143 ["judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding"].) The trial court rejected these text messages as speculative and unpersuasive evidence given Miller's no contest pleas to procuring and offering a false or forged instrument and Sara's deposition testimony. That testimony includes Sara's repeated statements that she would never have sold the Property. Rather than ratifying the sale, Sara testified she was resigned to moving because she was told she sold the Property and had no other alternative. (*Ibid.* [appellate courts presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence].)

To the extent Lion Share argues a no contest plea *alone* cannot constitute substantial evidence for finding a deed forged or false, resolving that issue here is unnecessary. In addition to Miller's no contest pleas, the court relied on Sara's testimony in which she unequivocally stated her belief that she was signing a reverse mortgage, not a document to sell her home. We further reject Lion Share's assertion Sara is bound by the purchase agreement because she signed the document despite failing to read it. Even in the civil context, "one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing" if "in the *absence of fraud*." (*Hulsey v. Elsinore Parachute Center*

11

(1985) 168 Cal.App.3d 333, 339, italics added.) Here, Sara is a victim of criminal fraud and signed the purchase agreement based on Miller's misrepresentations. Thus, Sara's signing the purchase agreement does not preclude the outcome here.

Substantial evidence supported the court's finding the deed was forged and hence void. (§ 115(e).) In light of this conclusion, we need not address the parties' arguments regarding the sufficiency of the evidence for finding the deed false. (*Astorga-Lider*, *supra*, 35 Cal.App.5th at p. 657 [affirming trial court order finding deed of trust void solely based on the finding the deed was forged]; *People v. Marquez* (1992) 1 Cal.4th 553, 578 ["the trial court's ruling must be upheld if there is any basis in the record to sustain it"].)

## III.

Lion Share contends the trial court abused its discretion by resolving the validity of the deed under section 115, rather than deferring to the pending quiet title action. Not so. The decision to proceed under section 115 rather than waiting for the resolution of the quiet title action was well within the court's discretion. (*Astorga-Lider*, *supra*, 35 Cal.App.5th at p. 656 [abuse of discretion standard of review for determinations under section 115, subd. (f)(9)(B)].)

Section 115 acknowledges there may be circumstances when a civil proceeding may be more appropriate for adjudicating the validity of a challenged instrument. It provides, in relevant part, "if the court determines that the interests of justice or the need to protect the property rights of any person or party so requires, including, but not limited to, a finding that the matter may be more appropriately determined in a civil proceeding, the court may decline to make a determination under subdivision

12

(e)." (§ 115, subd. (f)(9)(A).) Indeed, the statute explicitly contemplates that someone may have filed "a quiet title action that seeks a judicial determination of the validity of the same false or forged instrument that is the subject" of the pending section 115(e) motion, "or the status of an interested party as a bona fide purchaser of . . . the property affected by the false or forged instrument." (§ 115, subd. (f)(9)(B).) In those circumstances, "the court *may* consider that [civil suit] as an *additional* but not *dispositive* factor in making its determination under subdivision (e)." (*Ibid.*, italics added.) Nothing in these provisions mandates deference to an ongoing civil quiet title action. Rather, the statute confers the court with the discretion to either address the validity of an instrument or the interested party's status as a bona fide purchaser in a section 115(e) proceeding *or* defer to a civil proceeding.

In evaluating Lion Share's request that the trial court defer to the quiet title action, the court found Sara would be prejudiced by a lengthy civil proceeding that restricts her ability to make decisions regarding the Property. The record indicates the Property is Sara's only substantial asset, and uncertainty regarding title would restrict her ability to make financial decisions about her living situation and her husband, who has dementia. Far from ignoring Lion Share's status as a crime victim and a potential bona fide purchaser, as Lion Share contends, the court noted that resolving the deed's validity under section 115 would allow it to order victim restitution for both Lion Share and Sara.[2] This decision was not so irrational or arbitrary to

---

[2] Moreover, the trial court's conclusion that the deed was forged, and thus void from its inception, was fatal to Lion Share's bona fide purchaser argument. Unlike fraud in the inducement, " 'a forged document is void *ab initio* and constitutes a nullity' " and cannot be relied upon by a bona fide purchaser. (*Schmidt, supra*, 41 Cal.App.5th at p. 1058.)

constitute an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

IV.

Lion Share contends reliance on Miller's no contest plea to declare the deed void and the trial court refusal to defer to the quiet title action deprived it of a full and fair opportunity to adjudicate its title claim to the Property in violation of its due process rights.  Leaving aside Lion Share's failure to cite any relevant standards for assessing a due process claim, its argument ignores the record.

Section 115 states, in relevant part, "the prosecuting agency shall provide written notice by certified mail to all parties who have an interest in the property affected by the false or forged instrument."  (§ 115, subd. (f)(1).) That written notice "shall inform the interested parties that a criminal action has commenced that may result in adjudications against the false or forged instrument or the property affected by the false or forged instrument." (§ 115, subd. (f)(3).)  Significantly, the notice must inform "the interested parties of their right to be heard if a motion is brought under subdivision (e) to void the false or forged instrument."  (*Ibid*.)  At a section 115(e) hearing, those interested parties "shall have a right to be heard and present information to the court."  (§ 115, subd. (f)(8).)  An interested party's due process rights are not violated where the party is presented with several opportunities to oppose the People's section 115(e) motion, present evidence — including deposition testimony of the victims — and "challenge the evidence relied on by the People."  (*Astorga-Lider*, *supra*, 35 Cal.App.5th at p. 656.)

Lion Share filed multiple briefs; provided substantial exhibits including declarations, deposition testimony from Sara, and text messages from

14

Cynthia; and made oral arguments on two occasions regarding the People's section 115 motion.  In doing so, Lion Share challenged the People's evidence regarding whether the deed was false or forged. (During oral argument, Lion Share conceded it did not seek to present witness testimony at the section 115(e) hearing, nor did it challenge Sara's version of events during her deposition.)  Lion Share further urged the trial court to defer to the quiet title action.

In deciding whether the deed constituted a forged document, the trial court had before it not only Sara's deposition testimony, but also the evidence presented by Lion Share.  (*Ante*, at pp. 11–12; compare with *Estate of McGowan* (1973) 35 Cal.App.3d 611, 618 [conclusive presumption of no contest plea in a subsequent civil proceeding regarding the disposition of decedent's estate may deprive a third party of due process, and noting court must examine whether a defendant actually committed the offense alleged for the purposes of the proceeding].)  In sum, Lion Share had the "opportunity to be heard . . . 'at a meaningful time and in a meaningful manner.' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)  Lion Share was not denied due process.

## DISPOSITION

The judgment is affirmed.

15

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Fujisaki, J.

A161601

Superior Court of San Mateo County, Elizabeth K. Lee, Judge.

Steyer Lowenthal Boodrookas Alvarez & Smith, Jeffrey H. Lowenthal, Edward Egan Smith, Stacey C. Quan, for Real Party in Interest and Appellant.

Stephen M. Wagstaffe, District Attorney, Kimberly A. Perrotti, Deputy District Attorney, for Plaintiff and Respondent.