[Civ. No. 28867. First Dist., Div. Two. Aug. 24, 1971.]

WILLIAM R. GRANNIS, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

552

## COUNSEL

Wilson, Mosher & Martin, Roger L. Mosher and William I. Cohen for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Dennis M. Eagan, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**TAYLOR, J.**—This is an appeal from the judgment in a mandamus proceeding affirming an order of respondent, Board of Medical Examiners (hereinafter Board) revoking the certificate of petitioner, Dr. Grannis, to practice medicine, and from an order quashing his subpoena duces tecum.

On the appeal from the judgment, Dr. Grannis contends that: 1) a judgment entered on a plea of nolo contendere is not a conviction within Business and Professions Code section 2390; 2) the portion of Business and Professions Code section 2390 prohibiting the dangerous use of alcoholic beverages is not a valid and constitutional exercise of the police power; 3) he was not guilty of unprofessional conduct and, therefore, not subject to the disciplinary action of the Board; and 4) the Board abused its discretion and exceeded its jurisdiction as to the penalty imposed. On the appeal from the order granting the motion to quash the subpoena duces tecum, Dr. Grannis argues that the court abused its discretion in granting the motion.

The record reveals the following: In 1968, the Board, pursuant to Business and Professions Code section 2361,[1] accused Dr. Grannis of two counts of "unprofessional conduct" based on two separate clauses of Business and Professions Code section 2390:[2] 1) two convictions for violations

---

[1]Business and Professions Code section 2361 authorizes the Board to take action against any holder of a certificate who is guilty of unprofessional conduct. The statute states that unprofessional conduct includes, but is not limited to, violating or attempting to violate, directly or indirectly, any provisions of chapter 5, gross neglect, gross incompetence, gross immorality, moral turpitude, or any act or conduct that would have warranted the denial of the certificate.

[2]Business and Professions Code section 2390 provides, so far as pertinent, that "The use . . . or administering to himself . . . of alcoholic beverages to the extent, *or* in such manner as to be dangerous or injurious to a person holding a certificate . . . or to any other person or to the public, *or* to the extent that such use impairs the ability of [the licensee] to conduct with safety to the public the practice authorized by such certificate *or* the conviction of more than one misdemeanor . . . involving the use, consumption or self-administration of [alcoholic beverages] constitutes unprofessional conduct within the meaning of this chapter." (Italics added.)

of Vehicle Code section 23102 (misdemeanor drunk driving); and 2) the use of alcoholic beverages to the extent and in such a manner that they were dangerous to him, to other persons and/or to the public, on August 2, 1966, January 15, 1967, and January 18, 1968.[3]

At 2 a.m. on August 2, 1966, the Palo Alto police observed Dr. Grannis driving his automobile without lights and weaving from lane to lane in Palo Alto. After he had been stopped, the arresting officers noticed his eyes were red, watery and bloodshot and his complexion was flushed and shiny. He was subjected to three field sobriety tests but was able to perform only the first one fairly well. In the opinion of the arresting officers, Dr. Grannis' ability to safely operate a motor vehicle was substantially impaired. His blood alcohol level was determined to be .20 percent, the equivalent of 10 bottles of beer or 10 shots of whiskey. On October 19, 1966, Dr. Grannis was convicted on a plea of nolo contendere of a violation of Vehicle Code section 23102 arising out of the August 2, 1966 arrest. Subsequently, on June 18, 1968, pursuant to motions under Penal Code sections 1203.3 and 1203.4, the court permitted withdrawal of the nolo contendere plea and the entry of a plea of not guilty, and dismissed the complaint.

About 7:30 p.m. on January 15, 1967, a California Highway Patrol officer observed Dr. Grannis' vehicle headed east on the San Francisco freeway, making an abrupt lane change and then swerving down the off-ramp onto Bryant Street. He was forced over to the curb by the patrol car after failing to respond to successive use by the officers of the red light, horn and siren, and failed several field sobriety tests. Although Dr. Grannis was headed east toward the Bayshore, the doctor told the officers he had left from Seventh or Eighth and Market Streets for his home in Palo Alto, which was located in a different direction. In the opinion of the arresting officer, Dr. Grannis' ability to safely operate a motor vehicle was substantially impaired. His blood alcohol level on this occasion was .221 percent, a level at which an expert indicated that 93 percent of drivers were "grossly drunk." On April 18, 1967, Dr. Grannis was convicted on a plea of guilty of a violation of Vehicle Code section 23102, arising out of the January 15 arrest.

At the administrative hearing, Dr. Grannis' witness, his psychiatrist, Dr. Rose, who had seen Dr. Grannis weekly since March 1968, testified that Dr. Grannis was an alcoholic. Dr. Rose's definition of an alcoholic is a person who, with relatively minute quantities of alcohol, suffers an impairment of his neurophysiological system so he loses contact with the changes that are taking place in his personality and his ability to judge any impair-

---

[3]The facts that occurred on this date are not before this court as the trial court and hearing officer found them not substantiated by the evidence.

ment that takes place in his thinking or motor function. In an alcoholic, this upset of the mechanism that informs the person about his state of judgment or physical impairment is apparently not related to the blood alcohol level and can occur with a tablespoon of alcohol.

Dr. Rose then indicated that Dr. Grannis' drinking began with a depression after the death of his brother in 1966. Dr. Rose told Dr. Grannis he could not afford to drink at any time and did not think that the three occasions on which Dr. Grannis had consumed alcohol since 1968 were regressions. Dr. Grannis was making better progress than Dr. Rose's other alcoholic patients and his prognosis was excellent.

On cross-examination, Dr. Rose was asked: "Q. Now, this impairment of or gradually lessening of anxiety, which is heightened in an alcoholic, this in turn has a direct relationship to what we call good judgment? A. Yes, it does. Q. And that in turn, the lack of good judgment, would have a definite relationship to the quality of patient care which Dr. Grannis could give a patient if he had had any alcohol whatsoever? A. That is correct."

The hearing officer found that: both counts of disciplinary action had been established; Dr. Grannis was certified by the American Board of Orthopedic Surgeons, is a good and very conscientious practitioner, and enjoys an excellent reputation in his field; and that Dr. Grannis had established that at no time has his alcoholism impaired his professional competency. The Board adopted the hearing officer's decision as its own as to each count, revoked Dr. Grannis' license, but stayed the revocation and put the doctor on probation for a period of five years on the terms and conditions more fully set forth in the footnote below.[4]

The trial court found that on October 19, 1966, Dr. Grannis was convicted on a plea of nolo contendere of a violation of Vehicle Code section 23102 in the Municipal Court of the City of Palo Alto; on June 18, 1968, pursuant to Penal Code sections 1203.3 and 1203.4, a plea of not guilty was entered and the matter dismissed. On April 18, 1967, Dr. Grannis was convicted of another violation of Vehicle Code section 23102 in the Municipal Court of San Francisco. On August 2, 1966, and January 15, 1967, Dr. Grannis used alcoholic beverages to the extent that they were dangerous to him and other persons and to the public.

The court also found that Dr. Grannis began to drink after the death of

---

[4]Namely, that he was to completely abstain from the use of any alcoholic beverages, was to continue his course of psychiatric treatment until released by his psychiatrist, comply with all laws of the state and United States and rules and regulations of the Board, file a quarterly affidavit of compliance with the Board, and make an annual appearance before the Board.

his brother in April 1966. In March 1968 he began psychotherapy on a weekly basis; his psychiatrist believes he is an alcoholic but making good progress and requires further treatment. The weight of the evidence supports the Board's finding that the doctor is an alcoholic.

The trial court then concluded that: 1) a plea of nolo contendere is a conviction within Business and Professions Code section 2390 and the subsequent dismissal of that conviction pursuant to Penal Code section 1203.3 and section 1203.4 did not prevent the Board from relying on the conviction in an administration disciplinary proceeding pursuant to Business and Professions Code section 2390; 2) the convictions on October 19, 1966, and April 18, 1967, and the two acts on August 2, 1966, and January 15, 1967, constitute grounds for a disciplinary proceeding; 3) Business and Professions Code section 2390 is constitutional as a valid exercise of the police power; and 4) the Board did not proceed in excess of its jurisdiction or abuse its discretion or act arbitrarily in suspending Dr. Grannis' license for a period of five years, with conditions of probation.

■ The first question on appeal is whether a plea of nolo contendere and a judgment of conviction entered thereon is a conviction for the purpose of Business and Professions Code section 2390. The identical question was resolved with respect to Business and Professions Code section 24200, subdivision (d) in *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal. App.3d 209 [83 Cal.Rptr. 89], wherein the court set forth the following summary of the applicable law of this state at pages 219, 220 and 221: "The collateral effect of a nolo contendere plea in an administrative proceeding is a subject that produces little unanimity of opinion in legal circles. Although it is well established that a plea of nolo contendere may not be used in a civil action as an admission against interest, there is a division of authority amongst state courts as to whether or not a nolo contendere plea is evidence of a conviction or an admission against interest in an administrative action.

"The majority view is typified by the decision of the Missouri Supreme Court in *Neibling* v. *Terry*, 352 Mo. 396 [177 S.W.2d 502, 152 A.L.R. 249]. In that case the court explained that the confusion generated by the effect of the nolo contendere plea stems from the erroneous judicial practice of clothing the judgment of conviction with the characteristics of the plea. The court held that the fact of conviction is distinct from the plea because only the plea carries the evidentiary force of an admission. The court therefore concluded that a defendant cannot prevent the judgment of conviction from being used as a basis for applying an administrative penalty.

"The minority position is that any use of the nolo contendere plea or the conviction outside of the criminal case constitutes an admission of guilt.

Under the minority view, any use of the conviction is deemed the same as if the plea itself had been used as a conviction. Therefore, a conviction following a nolo contendere plea is not deemed a conviction for purposes of a statute authorizing administrative sanctions based solely upon a judgment of conviction. (See *Bruce* v. *Holesworth*, 129 Colo. 129 [267 P.2d 1014, 1017].)

"Two California cases adopted the minority view prior to the enactment of Penal Code section 1016 subdivision 3. In *Caminetti* v. *Imperial Mut. Life Ins. Co.*, 59 Cal.App.2d 476, 489 [39 P.2d 681], the officers of an insurance company entered a nolo contendere plea and were convicted in a federal court of a charge of defrauding the United States. The California Insurance Code authorized a conservator to seize any insurance company found to be in a condition hazardous to the investing public or creditors. The Insurance Commissioner attempted to introduce the federal conviction as conclusive evidence of fraud warranting the seizure of the company's assets. The court refused to permit the conviction to be used as an admission of fraud since it was based on the nolo contendere plea. The court characterized the nolo contendere plea as being an agreement between the defendant and the court 'solely and alone and for the purpose of that case and for no other purpose.' (P. 492.) In the case of *In re Hallinan*, 43 Cal. 2d 243 [272 P.2d 768], the Supreme Court approved a State Bar ruling that disbarment proceedings could not be instituted against lawyers convicted of a felony following a nolo contendere plea entered in a federal court. The court stated (p. 247): 'In view of *Caminetti* v. *Imperial Mut. L. Ins. Co.* . . . . holding that a plea of nolo contendere is not the equivalent of a plea of guilty and cannot be used in another proceeding as an admission against the person so pleading, the State Bar was justified in concluding that such a plea was not the equivalent of a "plea or verdict of guilty" within the meaning of section 6101 of the Business and Professions Code.'

"Subsequent to the *Hallinan* decision, the California Legislature amended a number of statutes in the Business and Professions Code to insure that convictions following the entry of a nolo contendere plea could provide the basis for an administrative penalty (e.g., § 6101 [attorneys]; § 1679 [dentists]; § 4354 [pharmacists]; § 5106 [accountants]; § 10100 [real estate brokers]; § 2765 [nurses]; § 4883 [veterinarians]; § 2688 [physical therapists]). The legislative action was selective, however, and a number of statutes were not amended to provide for nolo contendere convictions. Included in this category is section 24200 subdivision (d). Can it be inferred from this omission that the Legislature intended to exclude convictions following nolo contendere pleas from the coverage of section 24200 subdivision (d)?

"The intent of the Legislature is to be given effect whenever possible and statutes will be interpreted to promote rather than defeat legislative policy and purpose. (*Stigall* v. *City of Taft,* 58 Cal.2d 565 [27 Cal.Rptr. 441, 375 P.2d 289]; *McKesson* v. *Lowery,* 51 Cal.2d 660 [335 P.2d 662]; *Freedland* v. *Greco,* 45 Cal.2d 462 [289 P.2d 463].) The Legislature was reacting to the *Caminetti* and *Hallinan* decisions when it decided to remove this judicial shield from specific occupations and professions. It is reasonable to assume that the Legislature did not intend to remove this shield from occupations and professions not designated."

The identical reasoning applies here to the Legislature's failure to specifically amend Business and Professions Code section 2390. Significantly, this section[5] is not one that the Legislature saw fit to amend after the *Hallinan* decision to insure that convictions following the entry of a nolo contendere plea could provide the basis for an administrative penalty, while in 1951, the Legislature did so amend Business and Professions Code section 2384.[6] Here, as stated in *Kirby,* the omission of such an amendment has special significance in view of the plain language of Penal Code section 1016, subdivision 3, which states that ". . . the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based."

In the instant case, as in *Kirby,* the Board relies upon *Christensen* v. *Orr,* 275 Cal.App.2d 12 [79 Cal.Rptr. 656], to support its position that the nolo contendere plea entered by Dr. Grannis comes within Business and Professions Code section 2390. The court in *Kirby,* in distinguishing *Christensen,* stated at page 221: "In *Christensen* it was held that a plea of nolo contendere was a conviction within the meaning of Vehicle Code section 13352 subdivision (b) despite the limitations placed upon the use of a plea of nolo contendere by Penal Code secton 1016(3). The court stated (p.

---

[5]Section 2390 was amended by Statutes of 1947, chapter 308, section 1, to read substantially as now; some language was deleted by Statutes of 1965, chapter 1458, section 8.

[6]"The conviction of or cash compromise of a charge of violation of the Harrison Act regulating narcotics, or the conviction of a violation of the statutes of this State, regulating narcotics, or dangerous drugs, constitutes unprofessional conduct within the meaning of this chapter. The record of the conviction or compromise is conclusive evidence of such unprofessional conduct. A plea or verdict of guilty or a conviction following a plea of nolo contendere is deemed to be a conviction within the meaning of this section. The board may order the license suspended or revoked, or may decline to issue a license, when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code allowing such person to withdraw his plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information or indictment." The last two sentences were added by Statutes of 1951, chapter 792, section 2, page 2280.

13): 'The classic situation envisioned by the limitation of section 1016 is a personal injury suit for damages against a defendant drunk driver: the plea cannot be used as an admission in such a case. This situation is not applicable here. There was no civil suit. *There was merely the paper work of the DMV suspending Christensen's driver's license following the department's receipt of a certified abstract of the court's record showing Christensen had been convicted of drunk driving.* To establish a criminal conviction, the nolo contendere plea was the same as a guilty plea. Under it the court convicted Christensen of drunk driving. The license suspension was based on the utlimate fact of Christensen's conviction, not upon any implied admission or the manner in which that conviction came about, whether by guilty plea, finding of guilt after trial or nolo contendere plea.' "

Likewise here, as pointed out in *Kirby*, there is an important distinction between section 2390 and Vehicle Code section 13352 construed in *Christensen.* In either suspending or revoking a driver's license, the Department of Motor Vehicles carries out a mandatory ministerial function that involves only paper work, while an administrative hearing that must be conducted pursuant to the requirements of the Government Code necessitates the exercise of discretion by the Board and is quasi-judicial in nature.[7] While we are aware that California's adoption of the minority rule on the collateral effect of a plea of nolo contendere in civil proceedings in this state has been questioned (52 Cal.L.Rev. 408), we are constrained to follow it for the reasons set forth in *Kirby*. We conclude that the trial court erred in concluding that the judgment of conviction of October 19, 1966, entered on Dr. Grannis' plea of nolo contendere and subsequently dismissed, was a conviction within the meaning of Business and Professions Code section 2390. Accordingly, Dr. Grannis was not "convicted" of more than one misdemeanor involving the use of alcoholic beverages and the first count of disciplinary action under the statute cannot be sustained.

We turn next to the second count of the accusation, based on the second clause of Business and Professions Code section 2390, which states that the use of alcoholic beverages "to the extent, or in such manner as to be dangerous or injurious" to the licensee, to any other person, or to the public, constitutes unprofessional conduct. The second and third clauses of the statute are stated in the disjunctive and set off by commas.[8]

[7]In *Sunset Amusement Co.* v. *Board of Police Commissioners,* 16 Cal.App.3d 184 [93 Cal.Rptr. 890], it was held that a plea of nolo contendere was not proof of the violation for the purpose of the administrative hearing there involved, and distinguished *Christensen* in precisely the same manner as the court did in *Kirby, supra.*

[8]As noted above, Dr. Grannis was *not* charged under the third clause of Business and Professions Code section 2390, stating that the use of alcoholic beverages to the extent that such use impaired his ability to conduct with safety the practice authorized by his certificate, is unprofessional conduct.

Dr. Grannis contends that under *Morrison* v. *State Board of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], and *Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553], his license can be revoked only if the particular act relates to the practice of his profession, while here, the statute does not require such a relationship and, therefore, the second clause of the statute cited in the second count of the accusation is not a valid and constitutional exercise of the police power.

In *Yakov,* the court noted that the purpose of an action seeking revocation of a doctor's certificate is not to punish the doctor but to protect the public, and said at page 73, footnote 6: "While revocation of a certificate certainly works an unavoidable punitive effect, the board can seek to achieve a legitimate punitive purpose only through criminal prosecution. Thus, in this proceeding the inquiry must be limited to the effect of Dr. Yakov's actions upon the quality of his service to his patients." The court also noted at page 75: "The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection."[9]

The above language from *Yakov* was reemphasized in *Morrison, supra,* where the court applied the same reasoning to the attempted revocation of a teaching diploma pursuant to Education Code section 13202 based on conduct in the teacher's personal life that the Board of Education had found to be immoral, unprofessional and to involve moral turpitude. The court also noted that the power of the state to regulate professions and conditions of government employment must not arbitrarily impair the right of the individual to live his private life[10] apart from the job, as he deems fit. Likewise, here, private conduct of a man who is also a physician, is a proper concern to those who license him only to the extent that it marks him as a physician. Where his professional achievement is unaffected, where the patient community is placed in no jeopardy, his private acts are his own business and may not be the basis of discipline (cf. *Morrison, supra,* at p. 224).

Here, language of the second clause of the statute "use of alcoholic beverages to the extent dangerous to himself, to any person and to the

---

[9]It has been suggested that the right is within the penumbra of rights protected by the Ninth Amendment of the Constitution of the United States (14 U.C.L.A.L.Rev. 581, at p. 602).

[10]The record indicates that the trial court apparently believed that a professional like Dr. Grannis was on duty 24 hours a day. This is not only contrary to the holding of *Morrison* and *Yakov* but also to the uncontroverted evidence which indicated that Dr. Grannis worked only certain hours as he and his partner shared the responsibility of the office, saw his patients at certain hours in the office or the hospital, and performed operations only on Tuesday and Thursday mornings.

public" constitutes only a lingual abstraction until given content by reference to fitness for the performance of that vocation (*Morrison, supra,* p. 239).

The People concede the holdings of *Morrison* and *Yakov* but argue that these cases are not applicable here as they dealt with the interpretation of a vague general term such as moral turpitude, unprofessional conduct or immorality, while in Business and Professions Code section 2390, the Legislature has enumerated specific acts that it deems to be "unprofessional conduct," constituting grounds for disciplinary proceedings pursuant to Business and Professions Code section 2361.

We cannot agree that only general statutes require reasonable relationships between the conduct charged and the particular profession. ■ We think that the principle underlying *Morrison* and *Yakov* that a professional person licensed under a regulatory statute cannot be disciplined and his license revoked for conduct in his personal life unless that conduct makes the licensee unfit to practice his profession is also applicable to the more specific statutory provision here in issue.

■ Indeed, in *Morrison,* to sustain the constitutionality of the particular statute involved, the court interpreted the statute to include the reasonable relationship between the practice of the teaching profession and the particular acts (noncriminal homosexual conduct with another adult). Using the same approach, we think the language of Business and Professions Code section 2390 "use of alcoholic beverages to the extent, or in such manner as to be dangerous or injurious [to himself], or to any other person or to the public" denotes conduct of a physician which indicates unfitness to practice his profession.[11] We hold, therefore, as interpreted above, that the second clause of the statute is a proper exercise of the police power that *can be constitutionally* applied to Dr. Grannis.[12]

■ The next question presented is whether there is any substantial evidence in the record to indicate that the conduct with which Dr. Grannis was charged by the second count of the Board's accusation indicated his unfitness to practice his profession. The applicable rule of *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20], requires us to sustain

---

[11]As well as other members of a licensed profession who are constrained to be "temperate." The California statutes require that barbers have "good moral character and temperate habits" (Bus. & Prof. Code, § 6545, subd. (c) and § 6560.1, subd. (b)), but attorneys and architects need only be of "good moral character" (Bus. & Prof. Code, § 5552, subd. (a) and § 6060, subd. (c)).

[12]It could be argued that the presence of the third clause in section 2390 prevents this interpretation of the second clause. In *Morrison,* however, the statute construing Education Code section 13202 also contained a separate disjunctive clause stating that "evident unfitness for service" was a ground for revocation.

the trial court's decision if it is supported by credible competent evidence. Thus, all conflicts must be resolved in favor of the trial court and on legitimate and reasonable inferences indulged in to uphold the result reached. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its views for those of the trial court. Thus, pursuant to *Moran,* the question before this court turns upon whether the evidence reveals any substantial basis for the trial court's conclusion that the weight of the evidence indicates that Dr. Grannis' use of alcoholic beverages as charged was dangerous to the public. We emphasize that the danger to the public must involve the doctor's capacity for professional performance.

The only evidence in the record relating to the question of whether Dr. Grannis' drinking problem had any effect on his professional service to the public was the uncontroverted testimony of Dr. Rose. Dr. Rose indicated and the trial found that Dr. Grannis was an alcoholic, a term Dr. Rose defined as a person who, with relatively minute quantities of alcohol, suffers an impairment of his neurophysiological system that causes him to lose contact with the changes that are taking place in his personality and his ability to judge any impairment that takes place in his thinking or motor function. On cross-examination, Dr. Rose testified that the gradual lessening of anxiety is heightened in an alcoholic and has a direct relationship to good judgment, *which in turn would have a direct relationship* to the quality of patient care that Dr. Grannis could give a patient if he had any alcohol whatsoever. We conclude that this uncontroverted evidence is sufficient to sustain the disciplinary action under the second count of the accusation.[13]

We turn next to Dr. Grannis' contention that the Board abused its discretion and exceeded its jurisdiction in the penalty imposed. As indicated above, the Board stayed its order revoking Dr. Grannis' license and put him on probation for a five-year period, on certain conditions.

Where a penalty has been imposed to each of multiple causes for disciplinary action, as in this instance, and one of the causes is vacated, the case need not be remanded to the agency for a reconsideration of the penalty (*Shakin* v. *Board of Medical Examiners,* 254 Cal.App.2d 102, 112 [62 Cal.Rptr. 274, 23 A.L.R.3d 1398]). Determination of a penalty is a question of fact requiring the expertise of the administrative agency

---

[13]We do not deem the Board's finding that Dr. Grannis "established that *at no time* had his alcoholism impaired his professional competency" to be in conflict with the trial court's conclusion. In view of the testimony that Dr. Grannis was an alcoholic, there would always remain the question of his ability to respond professionally *in the future at a time when he had consumed the minimal amount of alcohol that Dr. Rose testified could impair his professional judgment.*

and its determination will not be overturned in the absence of a clear abuse of discretion (*Shakin, supra,* at p. 113; *Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 52 Cal.2d 287, 291 [341 P.2d 296]). No abuse of discretion or any arbitrary action appears here. The stay of the revocation of Dr. Grannis' certificate for the five-year probationary period was eminently reasonable and well designed to protect both the public and Dr. Grannis' right to pursue his profession.

 'Finally, we turn to the appeal from the order granting the motion to quash the subpoena duces tecum. The record indicates that the declaration in support of the subpoena was made on the information and belief that the executive secretary of the Board had in his possession and control documents showing for the period January 1, 1967, to May 4, 1970, what action the Board has taken against holders of certificates based on convictions of more than one misdemeanor involving the use of alcoholic beverages, or the use of alcoholic beverages in a dangerous manner, including "*what, if any,* discipline or penalties were imposed" (italics added). The declaration alleged that these records and documents were relevant to show that the Board had in fact abused its discretion in imposing the discipline and penalty in the instant case.

 Code of Civil Procedure section 1985 provides, so far as pertinent, that the affidavit served with a subpoena duces tecum issued before trial must show good cause for the production of the matters and things described, specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case. The facts that must be set forth in the affidavit other than the statutory requirements, may not be alleged on information and belief without setting forth facts in support of said information and belief (*Pacific Auto. Ins. Co.* v. *Superior Court,* 273 Cal.App.2d 61, 66-67 [77 Cal.Rptr. 836]; *Johnson* v. *Superior Court,* 258 Cal.App.2d 829, 836 [66 Cal.Rptr. 134]). The affidavit here lacks these additional supporting facts, and is insufficient on that ground alone. Dr. Grannis, however, relies on *Kenney* v. *Superior Court,* 255 Cal.App.2d 106 [63 Cal. Rptr. 84], wherein, in affirming an order partially granting a subpoena duces tecum, the court noted at page 110: "Authorities antedating the modern discovery laws of 1958 have held that allegations in affidavits on the basis of which the issuance of a subpoena duces tecum in connection with depositions are sought are insufficient if issued when made on information and belief. These cases are collected in *Procter & Gamble Mfg. Co.* v. *Superior Court,* 124 Cal.App.2d 157, at page 161. . . . The language of Code of Civil Procedure section 1985, requiring specification of 'the exact matters or things desired' seemingly connotes a rigidity which lends

sustenance to those earlier authorities. But the broadening of the scope of discovery both by statutory and case law since the enactment and original interpretation of section 1985 makes the earlier cases of little value. And, as a practical matter, how is a plaintiff ever to learn of the existence of these perhaps important sources of evidence vital to his cause except through information and belief? The aim of discovery is the ascertainment of truth—which is the aim of the court." In *Kenney*, the plaintiff in a malpractice action sought certain hospital records related to his treatment and to the existence of disciplinary proceedings if any against the defendant doctor.

Under the circumstances here presented, the good cause requirements of Code of Civil Procedure section 1985 are governed by the liberal standards of Code of Civil Procedure section 2031 (*Shively* v. *Stewart*, 65 Cal.2d 475, 481 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431]), the objective of which is not merely the discovery of admissible evidence but also effective preparation for trial (*Associated Brewers Distr. Co.* v. *Superior Court*, 65 Cal.2d 583, 587 [55 Cal.Rptr. 772, 422 P.2d 332]). However, here, unlike the situation in *Kenney*, the exact matters or things desired to be produced were not specified. The principal reason for the specificity requirement is to adequately apprise the custodian of what records are desired and the requested identification may be defeated by generality of description (*Flora Crane Service, Inc.* v. *Superior Court*, 234 Cal.App.2d 767, 786-787 [45 Cal.Rptr. 79]).

Again, relying on *Kenney, supra,* and *Harris* v. *Alcoholic Bev. etc. Appeals Bd.*, 62 Cal.2d 589 [43 Cal.Rptr. 633, 400 P.2d 745], Dr. Grannis contends that records of other disciplinary proceedings are relevant and that it would be unrealistic to require him to first exhaust all discovery procedures to determine in what similar proceedings the Board took similar action. As noted above, however, *Kenney* involved the specific records relating to the defendant doctor; in *Harris,* the court held that judicial notice could be taken of a bulletin from the Director of the Department to his administrators indicating that the schedule of penalties might not be followed for similar violations where aggravating or mitigating circumstances were present. The law permits judicial notice to be taken of public and private official acts of the executive department of the state.

In the instant case, no specific prior decisions of the Board are sought and the affidavit indicates that the affiant does not know of the nature of the penalties "if any" imposed, and would require the Board to conduct a burdensome blanket search of its records. Furthermore, there is no requirement that charges similar in nature must result in identical penalties (*Coleman* v. *Harris*, 218 Cal.App.2d 401 [32 Cal.Rptr. 486]). Nor is the

Board, as an administrative agency, bound to deal with present cases in the same manner as it has dealt with past cases that might seem comparable (*Communications Comm'n.* v. *WOKO,* 329 U.S. 223, 228 [91 L.Ed. 204, 208, 67 S.Ct. 213]).

Accordingly, we conclude that the trial court did not abuse its discretion in granting the Board's motion to quash the subpoena and the order of May 26, 1970, is affirmed.

The judgment is modified as to the first count of the accusation in accordance with the views expressed herein, and in all other respects affirmed. Respondent to recover costs on appeal.

Shoemaker, P. J., and Kane, J., concurred.

Petitions for a rehearing were denied September 23, 1971, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied October 21, 1971. Peters, J., was of the opinion that the petitions should be granted.