Filed 11/2/15  Stark v. Beaton CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| BRAD WARREN STARK et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>FRED S. BEATON, Individually and as Trustee, etc.,<br><br>Defendant and Appellant. | B260768<br><br>(Los Angeles County<br>Super. Ct. No. BS145043) |

APPEAL from the judgment and order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Miller & Milove, Brian D. Miller, Bradd L. Milove and Jacob B. Pyle; Esner, Chang & Boyer, Stuart B. Esner, Andrew N. Chang and Holly N. Boyer for Defendant and Appellant.

Edgerton & Weaver, Chad E. Weaver and Sabryne Coleman for Petitioners and Respondents.

# I. INTRODUCTION

Defendant, Fred S. Beaton, individually and as trustee of the Fred S. Beaton Revocable Trust, appeals from the denial of his petition to vacate an arbitration award. The trial court confirmed the arbitration award in favor of plaintiffs—Brad Warren Stark, Mission Wealth Management, LLC and National Planning Commission. In addition, defendants appeal from an order granting the arbitrator's motion to quash their deposition subpoena. We affirm the judgment and order.

# II. BACKGROUND

## A. Defendants' Claims in Arbitration

The parties submitted defendants' claims pursuant to the arbitration rules and procedure of the Financial Industry Regulatory Authority. Defendants requested expedited arbitration because Mr. Beaton, age 80, suffers from Parkinson's disease. Defendants' March 12, 2012 statement of claim alleges the following causes of actions: federal and state securities fraud; fiduciary duty breach and constructive fraud; actual fraud and deceit; unfair sales practices; negligence and negligent misrepresentation; elder abuse; and declaratory relief. In 2007, defendants were introduced to Mr. Stark, a registered investment advisor and broker. Mr. Stark is a principal of Mission Wealth Management LLC, a registered investment advisory firm. Mr. Stark made investment recommendations with respect to the proceeds from defendants' sale of real property in Santa Ynez, California. Plaintiffs encouraged defendants to invest the proceeds, in excess of $4 million, with 7 tenant-in-common real estate investments. A tenant-in-common investment is a type of private placement retail real estate syndication. Tenant-in-common real estate investments are structured as passive investments for sale to retail investors. Generally, such investments are offered through Financial Industry Regulatory Authority broker-dealers and their registered representatives. The statement of claim

2

states: "As passive investments, [tenant-in-common investments] are securities under Federal and State law. In a [tenant-in-common investment], the . . . investor takes title, generally through a special purpose limited liability corporation, to a percentage interest in commercial real estate subject to multiple complex agreements which generally provide for an affiliate of the sponsor of the securities offering to manage the investment for the . . . investors. In a [tenant-in-common investment], up to thirty five (35) retail investors take title to a pro rata interest in the commercial real estate."

According to the statement of claim, plaintiffs told defendants that the tenant-in-common investments' real estate operations would generate income. In addition, plaintiffs stated defendants would obtain tax savings, realized from the Internal Revenue Code section 1031 exchanges into the tenant-in-common investments. The private placement offering memoranda and other written market materials provided to defendants in connection with the tenant-in-common investments contained unrealistic assumptions concerning projected vacancy, rental rates and expenses. The statement of claim asserts: plaintiffs misrepresented the income and tax savings that would be realized from the investments; the sponsors engaged in financial gimmickry when structuring the offering such that credits and reserves were utilized to fund investor distributions; and sponsors and broker-dealers were paid high fees and commissions, at times in excess of 20 per cent of the amount invested.

### B. Selection of Arbitration Panel

In May 2012, the parties selected the arbitration panel by striking up to 12 of the 30 prospective arbitrators and ranking them. Based on the parties' submissions, three arbitrators were appointed: Richard Norman as chair; Martin Olinick; and Robert Forst. Mr. Norman had a scheduling conflict and was replaced by Peter Steinbroner. Plaintiffs challenged Mr. Steinbroner for cause because he failed to disclose he was pursuing a lawsuit regarding a real estate investment. Mr. Steinbroner asserted causes of action for fiduciary duty breach and fraud relating to alleged mismanagement of a real estate

3

investment.  Plaintiffs' challenge for cause against Mr. Steinbroner was granted on December 21, 2012.  Mr. Steinbroner was replaced by Milton Gross as arbitration panel chair.

## C.  Mr. Forst's Disclosures

Mr. Forst disclosed the following background information:  "I have been engaged in the full-time practice of law for the past forty-four years.  My first two years of practice were primarily devoted to representing taxpayers in the United States Tax Court.  For the next four years, I practiced civil litigation primarily representing individuals and companies in the entertainment industry.  Thereafter, my primary areas of practice have been international tax and business law.  [¶]  For the past seventeen years, I have served as a temporary judge in the California Superior Court, during which time I have heard and adjudicated more than six thousand cases.  [¶]  In 1994, I was appointed by the Secretary of the Treasury to the Taxpayer Advisory Panel as a California representative.  I devoted between 300-500 hours a year for three years to the panel providing input on the Internal Revenue Service's strategic initiatives, as well as helping the Internal Revenue Service identify ways to improve its service and satisfaction to the public.  [¶]  I have been a lecturer at California State University Northridge, where I taught Business Law.  I have published five articles concerning real estate syndication and international tax law.  I am a 1959 graduate, cum laude, of New York University School of Business.  I graduated from UCLA School of Law in 1965, where I was the Senior Editor of the UCLA Law Review."   Mr. Forst also disclosed he was an attorney with Freshman, Mulvaney, Marantz, Comsky & Forst from March 1968 to December 1983.

In addition, Mr. Forst submitted an arbitrator disclosure checklist.  The questions in the disclosure checklist are intended to help the arbitrator comply with the disclosure requirements of the Financial Industry Regulatory Authority rules.  The disclosure checklist instructs:  "When completing the Checklist, it is essential to make a reasonable and good faith effort to determine whether you have any relationships with the parties

4

and/or attorneys in the dispute and to make any necessary disclosures. In addition to relationships, it is advisable to disclose any life experience that may raise any doubt about your ability to be impartial. *Any doubts should be resolved in favor of making the disclosure.*" Mr. Forst answered "No" to the following questions: "10. A. Have you, your spouse, or an immediate family member been involved in a dispute involving the same or similar subject matter as the arbitration? [¶] B. Did the dispute assert any of the same allegations as the assigned arbitration, even if the dispute was not securities-related?"

D. Arbitration

Between February 11, 2013 and June 13, 2013, the arbitration panel held 14 hearings. On August 2, 2013, the arbitration panel issued its arbitration award. The arbitration award states in relevant part: "After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows: [¶] 1. Claimants' claims are denied in their entirety. [¶] 2. The Panel recommends the expungement of all references to the above-captioned arbitration from Respondent Brad Warren Stark's registration records maintained by the CRD, with the understanding that pursuant to Notice to Members 04-16, Respondent Brad Warren Stark must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive. [¶] . . . [¶] Pursuant to Rule 12805 of the Code, the Panel has made the following Rule 2080 affirmative finding of fact: [¶] The registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds. [¶] The Panel has made the above Rule 2080 finding based on the following reasons: [¶] The finding is based upon all of the evidence presented at the hearings. The Panel rules that Stark is innocent of any sales practice violations or other wrongdoings in connection with the sale and management of the [tenant-in-common investments] sold to Claimants. The Panel further finds that Stark's

5

actions were in furtherance of the interests of Claimants and that Stark acted in a forthright, honest and fair manner in his dealings with Claimants."  Plaintiffs filed a petition to confirm the arbitration award on October 9, 2013.

### E.  Petition to Vacate the Arbitration Award

On November 8, 2013, defendants filed a petition to vacate the arbitration award pursuant to Code of Civil Procedure section 1286.2, subdivision (a)(6).[1]  Defendants argued Mr. Forst's disclosures were misleading and incomplete.  Mr. Forst did not disclose he was a plaintiff in a lawsuit against a general partner in a real estate limited partnership.  Defendants asserted the litigation was in connection with a real estate syndication involving a Los Angeles apartment building.  Mr. Forst alleged fraud, fiduciary duty breach and negligence against a disabled elderly defendant who suffered from dementia.  Defendants also contended Mr. Forst failed to disclose his personal and extensive involvement as a general and limited partner in commercial real estate syndications.  In addition, defendants argued Mr. Forst failed to disclose a business association with Samuel Freshman.  Mr. Freshman and Mr. Forst were law partners from 30 years ago.  According to defendants, Mr. Freshman is a prominent real estate syndication promoter, and the author of the book, "Principles of Real Estate Syndication."  Mr. Forst allegedly maintained interests in commercial real estate syndications with Mr. Freshman and others.

In opposition, plaintiffs submitted the declaration of Mr. Freshman, who was Mr. Forst's former law partner.  Mr. Freshman met Mr. Forst in 1968 when they worked at the law firm of Freshman, Mulvaney, Marantz, Comsky & Forst.  They were law partners until 1983.  Mr. Freshman stated: "While associated with this law firm, Mr. Forst, myself and other law partners purchased real estate together, namely an apartment building known as Timber Apartments and a shopping center known as Lakeside Center.  We

---

[1]     Future statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

continue to own these properties today. At no time were interests in either of these properties offered to the general public. Rather, each of these properties has always been privately owned between myself and my former law partners." He further added: "Aside from my former law partners, there were never any other partners in the Timber Apartments or the Lakeside Center. [I]nterests in those properties were never offered to other individual investors of the general public. Our co-ownership is private in nature and the ownership is simply that of a partnership." Mr. Freshman stated: "My relationship with Mr. Forst since 1983 consists solely that of co-ownership of the Timber Apartments and Lakeside Center properties, which we purchased while law partners. I cannot recall being involved in any other real estate transactions with Mr. Forst besides these two properties." Mr. Freshman declared he had never been involved in any real estate syndication offerings with Mr. Forst. Mr. Freshman operated Standard Management Company, which was involved in real estate syndication. Mr. Freshman denied that Mr. Forst had a business or professional relationship with Standard Management Company. Mr. Freshman further added: "As indicated above, I have known Mr. Forst for over 45 years. To the best of my knowledge, Mr. Forst has never been involved in any real estate syndication offerings."

In reply, defendants submitted a declaration from Mason Dinehart, a Financial Industry Regulatory Authority arbitrator. Mr. Dinehart testified for defendants in the underlying arbitration. Based on his review of documents retrieved from public records, Mr. Dinhart stated, "[I]t appears that Robert Forst has a professional history and experience acting as a promoter and manger of real estate limited partnership interests which were securities sold through private placement offerings." Mr. Dinehart stated, "In contrast to the properties Mr. Forst owns along with Mr. Freshman and others, Mr. Forst appears, by reason of his status as general partner of the limited partnerships, to have the lead role in the management of the syndication for the benefit of the limited partners, who would typically be passive investors." Mr. Dinehart reasoned: "Since limited partners are by definition passive investors, a limited partnership interest in a real estate investment is almost always a security. As securities, a real estate limited partnership

7

interest is regulated to the same extent and pursuant to the same regulations as the [t]enant in common interests which were the subject of the [underlying] arbitration hearing. . . . By all appearances, the real estate limited partnerships for which Mr. Forst acted as the general partner involved private placement of securities sales, whether or not a broker-dealer was employed to conduct the securities sales. Indeed, the absence of a broker-dealer typically indicates that the general partner had greater responsibility not only for the creation and management of the investment, but the offer and sale process as well." In addition, Mr. Dinehart concluded, "Mr. Freshman's statement that the interests were not offered to the general public does not distinguish those real estate syndications from the real estate syndications at issue in the underlying arbitration, i.e., all were private placements."

### F. Subpoena to Mr. Forst and His Motion to Quash

On February 4, 2014, defendants served a deposition subpoena on Mr. Forst. Mr. Forst's deposition was noticed for March 12, 2014. The deposition subpoena also demanded document production responsive to 43 requests relating to: pleadings and transcripts of Mr. Frost's testimony concerning two litigations, *Forst v. Worms* and *Forst v. Saxonia Apartments*; personal and financial information concerning Mr. Forst's real estate investments from 1983 to August 2013; investments with Mr. Freshman and/or Standard Management Company from 1983 through August 2013; and correspondence to plaintiffs' counsel concerning defendants. On February 26, 2014, Mr. Forst moved to quash the deposition subpoena.

### G. Motion to Quash

On July 30, 2014, the hearing on Mr. Forst's motion to quash defendants' deposition subpoena was held. On August 1, 2014, Mr. Forst's motion to quash the deposition subpoena was granted. The trial court found the subpoena was very broad

seeking numerous documents including: "[a]ll documents identifying Forst as a general or limited partner of any entities owning real estate from 1983 to the present"; "[a]ll documents reflecting the terms of compensation for managing any entity which owned real estate from 1990 through August 2013"; "[a]ll documents identifying securities offerings and real estate syndications in which Forst participated in any manner from 1983 to present"; "[a]ll documents identifying any real property owned by an entity in which Forst acted as a general partner [] from 1983 through August 2013"; "[a]ll documents which pertain to 'all real estate syndications' in which Forst acted as the general partner or manager of from 1983 through August 2013"; "[a]ll correspondence to certain individuals and a law firm that pertain to [defendants] or mention [defendants]"; "23 separate requests for all documents related to various properties, partnerships and LLC's"; "[a]ll documents relating to any limited partnerships Forst was a partner of in several cities and states."

The trial court summarized defendants' arguments thusly: "To support his argument that Forst failed to make required disclosures related to his previous involvement in real estate syndication, [defendant] cites [Forst's] participation in a lawsuit filed in 2004 during which he was deposed and admitted that he had numerous 'partnership interests' in apartment buildings in California, Ohio, Texas and potentially other states and also admitted to owning one apartment building in Columbus, Ohio. . . . A review of the transcript provided by [defendant] shows that [Forst] was questioned regarding a limited partnership agreement that was the subject of that case. . . . The transcript also suggests that this partnership agreement concerned the acquisition of certain apartment buildings in 1981. . . . [¶] [Defendant] also offers a reply declaration from his expert in the underlying arbitration, Mason Dinehart, who opines that the type of 'Tenant in Common' investment which was the subject of [defendant's] arbitration claims is a type of real estate syndication and 'the principles and issues applicable to an evaluation of real estate syndications are the same whether the form of real estate ownership is through a limited partnership, Tenant in Common, LLC or other ownership structure. . . . He then states that 'it appears' that Forst 'has a professional

9

history and experience acting as a promoter and [manager] of real estate limited partnership interests' which he arrives at based on a review of documents submitted by [defendant's] counsel. . . . He also adds that it appears Forst 'by reasons of his status as general partner of the limited partnerships, to have the lead role in the management of the syndication for the benefit of the limited partners.' [¶] [Defendant] ultimately concludes that because Forst was the seller of limited partnership securities, he could have been a potential target for liability under the same federal and California securities statutes that [defendant] brought his claims under. Thus, he reasons, a reasonable person could believe Forst would be biased against claims seeking to impose the same type of potential liability. Such a conclusion is highly speculative as [defendant] has not sufficiently demonstrated the similarities between the investments or that Forst actually sold similar investments in the past. It is also unclear why investments from the 1980's and 90's might be relevant to the claims in the underlying arbitration and the competing petitions before the Court. [¶] Taken together, these claims are insufficient to support the broad and invasive requests and contrary to [defendant's] claims, they are not 'clear evidence of the impropriety' that would justify the deposition of an arbitrator. Moreover, [defendant] has not offered any explanation or justification for the broad time period of production he is seeking, which frequently spans 30 years."

H. Petitions to Vacate and Confirm the Arbitration Award

On September 8, 2014, the hearing on the parties' petitions to confirm and vacate the arbitration award was held. On October 6, 2014, Mr. Stark's petition to confirm the arbitration award was granted. Defendants' petition to vacate the arbitration award was denied.

The trial court rejected defendants' assertion that Mr. Forst was required to disclose his prior litigation, experience as a real estate syndicator, and partnership with a prominent real estate syndication promoter. The trial court stated: "[Defendant] argues that the instant case and Forst's prior case both involve allegations of fraud, breach of

10

fiduciary duty, and negligence in connection with 'real estate syndications' and include 'disabled persons with diminished capacity as parties. [¶] . . . The instant [Financial Industry Regulatory Authority] action relates to the purchase of seven private placement offerings sold only to accredited investors like [defendant], and [] the only respondents were the broker (Stark), his management company ([Mission Wealth Management, LLC]), and his broker dealer ([National Planning Corporation]). In contrast, the record in Worms shows that Forst, as successor trustee to his late mother, brought an action against the managing partner of an apartment building in which his mother purchased an interest in 1981. . . . As successor trustee, Forst discovered that the general partner had become disabled and had mismanaged the property. . . . [Defendant] argued that the Worms complaint evidences bias against the handicapped. However, this accusation is unfounded because the parties in Worms *stipulated* to the manager's mental disability and resulting incompetence to manage the property, ultimately resulting in dissolution of the partnership. . . . Further, there is no evidence that the Worms lawsuit had anything to do with 'real estate syndication, 'securities transactions,' or even an investment by Forst, as the original investment was made by his mother. Accordingly, Forst was not obliged to disclose the lawsuit as it was not based in similar subject matter as the arbitration. [Defendant] adduced no evidence that the Worms lawsuit evidence bias in Forst. A reasonable, objective viewer would not find that the lawsuit indicates prejudice." The trial court found there was no evidence Mr. Forst was a real estate syndicator. The trial court stated: "Forst and Freshman are partners in the ownership of some commercial properties. Forst's ownership of commercial properties and past employment with Freshman is not evidence of 'real estate syndication.'"

## III.  DISCUSSION

### A.  Mr. Forst's Disclosure Was Neither False nor Incomplete

Under section 1286.2, subdivision (a)(6)(A), the court must vacate an arbitration award if an arbitrator fails to disclose a ground for disqualification.  Section 1281.9, subdivision (a) states:  "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial. . . ."  A party questioning an arbitrator's impartiality carries the burden of establishing the appearance of bias.  (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 391; *Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1290.)

Here, the disclosures are governed by the Financial Industry Regulatory Authority Rules.  In particular, Financial Industry Regulatory Authority Rule 13408, subdivisions (a)(2) and (a)(3) state:  "Before appointing arbitrators to a panel, the Director will notify the arbitrators of the nature of the dispute and the identity of the parties.  Each potential arbitrator must make a reasonable effort to learn of, and must disclose to the Director, any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, including:  [¶]  . . .  [¶] (2)  Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, that are likely to affect impartiality or might reasonably create an appearance of partiality or bias; [¶] (3)  Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, partners, or business associates. . . ."  Mr. Forst had a continuing disclosure duty concerning circumstances that might preclude him from rendering an impartial determination as described in Financial Industry Regulatory Authority Rule 13408, subdivision (a).  (Financial Industry Regulatory Authority, Rule 13408, subd. (b).)

12

In *Haworth v. Superior* Court (2010) 50 Cal.4th 372, 393, our Supreme Court stated: "There are many reasons why a party might, reasonably or unreasonably, prefer not to have a particular arbitrator hear his or her case – including the arbitrator's prior experience, competence, and attitudes and viewpoints on a variety of matters. The disclosure requirements, however, are intended only to ensure the impartiality of the neutral arbitrator. (See Ethics Stds., com. to std. 7.) They are not intended to mandate disclosure of all matters that a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator. [Citation.]" (Accord, *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 646.) Our Supreme Court cautioned: "[T]he appearance-of-impartiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."' [Citations.] 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer."' [Citations.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provides the governing standard.' [Citations.]" (*Haworth v. Superior Court, supra,* 50 Cal.4th at p. 389; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1311.) Our Supreme Court explained, "'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.' [Citation.]" (*Haworth v. Superior Court, supra*, 50 Cal.4th at p. 389; accord *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 66.)

An arbitrator's alleged failure to disclose is a mixed question of law and fact that is subject to de novo review. (*Haworth v. Superior Court, supra,* 50 Cal.4th at pp. 385-386; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP, supra,* 219 Cal.App.4th at p. 1312; *Rebmann v. Rohde, supra,* 196 Cal.App.4th at p. 1290.) Our Supreme Court explained judicial administration concerns of efficiency, accuracy and precedential weight, favor de novo review. (*Haworth v. Superior Court, supra,* 50

13

Cal.4th at p. 386; see *People v. Louis* (1986) 42 Cal.3d 969, 986-987.) Our Supreme Court reasoned: "[A]though the application of the appearance-of-partiality test does depend upon the facts and circumstances of each case, de novo review—through the establishment of appellate precedent—will promote consistency in the interpretation and application of the disclosure requirement. . . . [¶] . . . The appearance-of-partiality standard is a 'fluid concept' that takes its substance from context and cannot be reduced to simple legal rules. Nevertheless, application of a de novo standard of review will further the development of a uniform body of law and clarify the applicable legal principles, guiding arbitrators in their decisions as to which matters must be disclosed. Such guidance from appellate courts will further the public policy of finality of arbitration awards by reducing the likelihood that an award will be vacated because of an arbitrator's erroneous failure to disclose." (*Haworth v. Superior Court, supra,* 50 Cal.4th at p. 386.) An arbitrator's failure to make a required disclosure requires the award be vacated, without a showing of prejudice. (*Haworth v. Superior Court, supra,* 50 Cal.4th at p. 394; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP*, *supra*, 219 Cal.App.4th at p. 1311.)

Defendants contend Mr. Forst failed to disclose his personal and extensive involvement as a general and limited partner in commercial and residential real estate syndications. In a 2005 deposition in *Forst v. Worms*, Mr. Forst testified he was a general partner of apartment buildings in California, Ohio, Oklahoma and Texas. Mr. Forst testified he currently owns apartment buildings in Columbus, Ohio and Lawton, Oklahoma. Defendants also challenge Mr. Forst's failure to disclose his role as president of Forst Law Corporation. The Forst Law Corporation is identified as the general partner for: Quebec Village Properties; 2877 Valley Boulevard, Limited; 10700 Ohio, Limited; and Sugarland Road, LP.

A real estate syndication is broadly defined as a group investment in real property. (1 Cal. Real Estate Law & Practice (Matthew Bender 2015) Definition of a Real Estate Syndicate, ch. 20, § 20.01). A real estate syndicate may be three or more friends or acquaintances who invest together by purchasing real property such as an apartment

14

building. (*Ibid.*) But a real estate syndicate also may be a national limited partnership put together by a promoter or syndicator with several hundred or more investors that own many types of real estate. (*Ibid.*) Mr. Forst was involved in group investment of real property with friends and acquaintances. This is different from the private placement real estate syndication securities purchased by defendants. The underlying arbitration involves plaintiffs' financial advice and sale to defendants of tenant-in-common real estate securities offered by third party sponsors. According to defendants' statement of claim, tenant-in-common real estate investments are structured as passive investments for offer and sale to retail investors. As noted, these investments are generally made through Financial Industry Regulatory Authority broker-dealers and their registered representatives. The statement of claim alleges the private placement offering memoranda and other written market materials provided to defendants in connection with the tenant-in-common investments contained unrealistic assumptions. Those unrealistic assumptions concerned projected vacancy, rental rates and expenses.

Unlike the private placement real estate syndications at issue in the underlying arbitration, there is no evidence the real estate syndications joined by Mr. Forst had outside investors. There is no evidence Mr. Forst was involved in the offer or sale of real estate securities to retail investors through Financial Industry Regulatory Authority broker-dealers. Nor is there evidence Mr. Forst issued private placement offering memoranda and other written marketing materials as president of Forst Law Corporation. Nor is there any evidence Mr. Forst issued private placement offering memoranda or other materials as a general partner of various apartment buildings in California, Ohio, Oklahoma and Texas.

Mr. Dinehart, who testified during the arbitration for defendants, suggests Mr. Forst was involved with private placement of securities as general manager of various real estate limited partnerships. Mr. Dinehart reasons: "Since limited partners are by definition passive investors, a limited partnership interest in a real estate investment is almost always a security. As securities, a real estate limited partnership interest is regulated to the same extent and pursuant to the same regulations as the [t]enant in

15

common interests which were the subject of the [underlying] arbitration hearing. . . . By all appearances, the real estate limited partnerships for which Mr. Forst acted as the general partner involved private placement of securities sales, whether or not a broker-dealer was employed to conduct the securities sales." Mr. Dinehart's opinion is not supported by the evidence. Mr. Freshman, who has known Mr. Forst for over 45 years, declared, "To the best of my knowledge, Mr. Forst has never been involved in any real estate syndication offerings."

Further, defendants contend Mr. Forst was required to disclose a business association with Mr. Freshman. As noted, Mr. Forst and Mr. Freshmen were former law partners at the Freshman Mulvaney, Marantz, Comsky & Forst law firm. Mr. Forst and Mr. Freshman both left the law firm in 1983. Later, Mr. Freshman became a partner in a large number of real estate syndicates and authored the book, "Principles of Real Estate Syndication." Mr. Freshman also is the founder and chair of Standard Management Corporation, a major real estate syndication firm. Mr. Freshman's declaration refutes defendants' assertion the two former law partners were involved together in real estate syndication activities. Mr. Freshman stated: "While associated with this law firm, Mr. Forst, myself and other law partners purchased real estate together, namely an apartment building known as Timber Apartments and a shopping center known as Lakeside Center. We continue to own these properties today. At no time were interests in either of these properties offered to the general public. Rather, each of these properties has always been privately owned between myself and my former law partners." Mr. Freshman could not recall being involved in any other real estate transactions with Mr. Forst besides these two properties.

In addition, Mr. Freshman has never been involved in any real estate syndication offerings with Mr. Forst. Mr. Freshman also denied Mr. Forst had a business or professional relationship with Standard Management Company, a real estate syndication venture. Mr. Forst was not required to disclose this business association with Mr. Freshman under Financial Industry Regulatory Authority Rule 13408 or section 1281.9, subdivision (a). A reasonable person would not find that Mr. Forst's real estate

16

investments with friends and family create an appearance of partiality or bias for or against the parties. (*Haworth v. Superior Court, supra*, 50 Cal.4th at p. 389; *Benjamin, Weill & Mazer v. Kors, supra,* 195 Cal.App.4th at p. 66.)

Defendants contend Mr. Forst's disclosure checklist is false and misleading. As noted, Mr. Forst answered "No" to the following questions: "10. A. Have you, your spouse, or an immediate family member been involved in a dispute involving the same or similar subject matter as the arbitration? [¶] B. Did the dispute assert any of the same allegations as the assigned arbitration, even if the dispute was not securities-related?" Defendants assert Mr. Forst should have disclosed *Forst v. Worms*, a case he filed in Los Angeles Superior Court in 2004. The *Worms* complaint alleges fraud and breach of fiduciary duty in connection with a general partner's management of a Los Angeles apartment building. The apartment building is owned by Saxonia Apartments, a limited partnership created in 1981. Defendants argue the *Worms* litigation is similar to the underlying arbitration because it involves allegations of fraud, breach of fiduciary duty and negligence in connection with real estate syndications. But Mr. Forst filed the lawsuit as trustee of his mother's trust, which is a limited partner in Saxonia Apartments. The investment in Saxonia Apartments was not made by Mr. Forst but by his mother. And unlike in *Worms*, defendants are not bringing claims against plaintiffs for mismanagement of real estate property. Rather, the claims in the underlying arbitration involve plaintiffs' conduct as defendants' financial advisor and broker.

Defendants further argue disclosure was required because both *Worms* and the underlying arbitration involve disabled persons with diminished capacity as parties. Mr. Beaton suffers from Parkinson's disease while the *Worms* defendant suffers from Alzheimer's dementia. Defendants contend Mr. Forst's lawsuit against a disabled defendant in *Worms* creates an appearance of bias against defendants. But there is no evidence Mr. Beaton was a disabled person with diminished mental capacity. Also, the general partner's mental capacity was not at issue in the *Worms* litigation. The parties stipulated Bernard Worms, the general partner of Saxonia Apartments, was incapacitated.

17

We agree with the trial court that a reasonable, objective person would not find that the *Worms* litigation indicates prejudice against disabled parties.

Defendants also contend the arbitration award should be vacated because of Mr. Forst's failure to disclose the *Worms* litigation is similar to Mr. Steinbroner's nondisclosure of a prior lawsuit. Mr. Steinbroner was appointed as a replacement chairperson following the withdrawal of Mr. Norman from the arbitration panel. Plaintiffs successfully challenged Mr. Steinbroner's appointment because he failed to disclose he was a plaintiff in a 2007 action regarding a real estate investment. In addition, Mr. Steinbroner's failure to disclose prior litigation resulted in a 2011 vacatur of an arbitration award issued by him in *Hagman v. Citigroup Global Markets, Inc.* (Super. Ct. L.A. County, Feb. 9, 2011, No. BS128800).

Defendants' reliance on the Judge Michelle Rosenblatt's vacatur order in the *Hagman* case is misplaced. *Hagman* is not binding authority and distinguishable from the present case. Judge Rosenblatt found in the *Hagman* litigation that both Mr. Steinbroner's lawsuit and that arbitration "generally" involved allegations of the same subject matter. Both the arbitration and Mr. Steinbroner's prior lawsuit concerned the mismanagement of parties' retirement funds. As noted, the *Worms* litigation concerns the mismanagement of an apartment building by a general partner. As defendants admit, the claims in the underlying arbitration do not arise from plaintiffs' management of real property. Rather, the arbitration concerns plaintiffs' alleged violations of their duties as defendants' financial advisor and broker. The *Worms* litigation and the underlying arbitration do not involve allegations of the same subject matter. Thus, Mr. Forst was not required to disclose the *Worms* litigation. A reasonable person would not find that Mr. Forst's prior lawsuit creates an appearance of partiality or bias for or against the parties. (*Haworth v. Superior Court, supra*, 50 Cal.4th at p. 389; *Benjamin, Weill & Mazer v. Kors, supra,* 195 Cal.App.4th at p. 66.)

## B. Granting the Motion to Quash Was Not Abuse of Discretion

There is no merit to defendants' contention that the trial court erred by granting the motion to quash the deposition subpoena for Mr. Forst. We review an order quashing a subpoena for an abuse of discretion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535; see *Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551, 566.) One court has held Evidence Code section 703.5[2] permits that a post-arbitration arbitrator's deposition be ordered only under specified circumstances. That court held that an arbitrator's deposition may be ordered if the information sought is relevant to information that would give rise to disqualification proceedings under section 170.1, subdivision (a)(1) or (a)(6). (*Rebmann v. Rohde, supra,* 196 Cal.App.4th at p. 1294.)

In considering whether an arbitrator's deposition may be ordered, as with other issues, we can look to federal arbitral law in deciding state law procedural arbitration disputes. (*Stasz v. Schwab* (2004) 121 Cal.App.4th 420, 439; see *Haworth v. Superior Court, supra*, 50 Cal.4th at p. 389.) Under federal law, deposition of an arbitrator is not permitted absent clear evidence of impropriety. (*Woods v. Saturn Distribution Corp.* (9th Cir. 1996) 78 F.3d 424, 430; *Lyeth v. Chrysler Corp.* (2d Cir. 1991) 929 F.2d 891, 899.) Here, defendants fail to establish evidence of *any* impropriety sufficient to justify Mr. Forst's deposition and the production of an extensive array of documents. The trial court did not abuse its discretion in granting Mr. Forst's motion to quash the deposition subpoena. (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 285; *Johnson*

---

[2]    Evidence Code section 703.5 states: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure. However, this section does not apply to a mediator with regard to any mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

*v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061.)  We need not address the issue of whether Mr. Forst should have been served with the notice of appeal and briefs. (*Rebmann v. Rohde, supra,* 196 Cal.App.4th at pp. 1293-1294.)  Further, we need not discuss the absence of any showing of prejudice resulting from the order quashing the deposition subpoena.  (Cal. Const., art. VI, § 13; *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045; *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532-533.)

## IV.  DISPOSITION

The judgment and order under review are affirmed.  Plaintiffs, Brad Warren Stark, Mission Wealth Management, LLC and National Planning Commission, shall recover their costs of appeal from defendants, Fred S. Beaton, individually, and as trustee of the Fred S. Beaton Revocable Trust.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

KRIEGLER, J.

20